**UNITED STATES of America**

v.

**Eric T. KONEFAL, Leroy Hodge and Harold J. Share, Defendants.**

**No. 83–CR–15.**

United States District Court, N.D. New York.

June 22, 1983.

Frederick J. Scullin, Jr., U.S. Atty., N.D. N.Y., Syracuse, N.Y., for plaintiff; Nancy S. Jones, Asst. U.S. Atty., Syracuse, N.Y., of counsel.

Julian & Pertz, Utica, N.Y., for defendant Konefal; Robert F. Julian, Utica, N.Y., of counsel.

Edward F. Gerber, Syracuse, N.Y., for defendant Hodge.

Paul R. Shanahan, Syracuse, N.Y., for defendant Share.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

On February 24, 1983, the grand jury returned a three count indictment against defendants Konefal, Hodge and Share. Count I charges all three defendants with conspiracy to defraud the United States by obstructing and hindering the Treasury Department in administering the Currency and Foreign Transactions Reporting Act. Such conspiracy is alleged to have taken place between July 1, 1982 and January 25, 1983. Count II charges all three defendants with causing several banks to fail to file currency transaction reports with the Internal Revenue Service. Such activity is alleged to have taken place between December 1, 1982 and January 25, 1983 and is further alleged to have involved transactions exceeding $100,000.00 in a 12-month period. Count III charges all three defend-

ants with making false statements to and/or misleading agents of the Internal Revenue Service with regard to the allegations in counts I and II.

Presently before the Court are omnibus motions for relief by each defendant. Specifically, the defendants ask for a dismissal of the indictment, a bill of particulars, severance, suppression, a change of venue, and discovery. The Court will address these motions seriatim.

## I

### DISMISSAL OF THE INDICTMENT

In 1970, Congress passed the Currency and Foreign Transactions Reporting Act. The express purpose of the Act was "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 5311 [Pub.L. 97–258, 96 Stat. 995, Sept. 13, 1982]; *United States v. Thompson*, 603 F.2d 1200, 1202 (5th Cir.1979). As noted in the House Report:

> Criminals deal in money—cash or its equivalent. The deposit and withdrawal of large amounts of currency or its equivalent (monetary instruments) under unusual circumstances may betray a criminal activity. The money in many of these transactions may represent anything from the proceeds of a lottery racket to money for the bribery of public officials.

H.R.Rep. No. 91–975, 91st Cong., 2d Sess. *reprinted in* 1970 U.S.Code Cong. & Ad. News 4394, 4396. Thus, there was a real need for the Government to be apprised of large cash transactions in its domestic financial institutions.

Section 221 of the Act, 31 U.S.C. § 5313(a), provides that when domestic financial institutions are involved in cash transactions in an "amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation," the institution shall file a currency transaction report with the Secretary of the Treasury. Pursuant to this mandate, the Secretary promulgated the following reporting requirement:

> Each financial institution shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000.00. Such reports shall be made on forms prescribed by the Secretary and all information called for in the forms shall be furnished.

31 C.F.R. § 103.22(a) (1982).

The gravamen of the present indictment is that all three defendants engaged in a scheme to circumvent the above reporting requirements. The indictment charges that defendants purchased cashiers checks at various local banks in amounts less than the $10,000.00 threshold. The checks were often purchased with fictitious remitters' names and were then used to purchase bearer bonds. By structuring their transactions in this manner, defendants allegedly prevented the banks from filing currency transaction reports pursuant to 31 C.F.R. § 103.22(a).

Defendants initially attack the indictment on the ground that they as individuals were under no duty to file currency transaction reports. Such an argument loses its persuasiveness in light of *United States v. Thompson*, 603 F.2d 1200. In *Thompson*, the Fifth Circuit upheld the conviction of an individual for "unlawfully causing the Ridglea Bank of Fort Worth, Texas to fail to file a currency transaction report (CTR) ...." *Id.* at 1201. While Thompson was an officer of the bank in question, he clearly was not a person who was under an obligation to file a CTR. Nevertheless, the court found that his activities were such as to support a violation of the Act.

As to the argument that there was no violation of the Act because only transactions under $10,000.00 were made, the court in *Thompson* held that a person could not purposefully structure his transactions so as to get around the CTR filing requirement.

Appellant cannot flout the requirements of § [5313] with impunity. The decision

to structure a $45,000.00 transaction in currency as five $9,000.00 loans with the intent to annul the reporting requirements does not equate to a decision to structure a financial transaction in a lawful manner so as to minimize or avoid the applicability of a tax covering only specific activity.

*Id.* at 1203–04. Thus the Court finds that the indictment properly charges a crime under the Currency and Foreign Transactions Reporting Act.

Violations of the Act are misdemeanors punishable by a fine of not more than $1,000.00 and/or up to one year in jail. 31 U.S.C. § 5322(a). However, when the violation is "part of a pattern of illegal activity involving transactions of more than $100,000 in a 12-month period," the crime becomes a felony and is punishable by a fine of not more than $500,000.00 and/or up to five years in jail. 31 U.S.C. § 5322(b). In the instant case, defendants argue that the escalation of the charge into a felony pursuant to section 5322(b) is improper.

The Second Circuit recently considered the felony enhancement provision of the Act in *United States v. Dickinson,* 706 F.2d 88 (2d Cir.1983). In *Dickinson,* the court held that in order to sustain the application of the enhancement section, the pattern of illegal activity must involve repeated violations of the Act itself, related to each other, and together involving more than $100,-000.00 in a 12-month period. *Id.* at 91. *See also United States v. Kattan-Kassin,* 696 F.2d 893 (11th Cir.1983); *United States v. Thompson; United States v. Beusch,* 596 F.2d 871 (9th Cir.1979). The Second Circuit in *Dickinson* reversed a felony conviction because it found that the felony enhancement provision has been improperly applied to a *single* transaction involving more than $100,000.00. In the present case, however, the indictment charges *numerous* transactions involving more than $100,000.00. Thus, the ruling in *Dickinson* does not affect the validity of the instant indictment.

■ The last question to be addressed with regard to the indictment is that of multiplicity. Defendants argue that count

II refers to many different transactions and that each transaction constitutes a separate offense. Thus, the indictment was allegedly drawn in violation of Fed.R.Crim.P. 7(c) and 8(a). Under section 5322(b), the Government must prove a pattern of illegal activity over a 12-month period involving over $100,000.00. In addition, the predicate violation of the Act is found through the making of different transactions under the $10,000.00. Thus, by definition, a felony indictment under the Act must allege many different transactions to constitute a single crime. *See United States v. Kearney,* 451 F.Supp. 33, 36 (S.D.N.Y.1978) (citing *United States v. Daley,* 454 F.2d 505, 509 (1st Cir. 1972)).

Defendants will be protected from jury confusion or multiplicity problems by the use of appropriate jury instructions. Should the jury find that the activity was not part of a pattern of illegal activity involving over $100,000.00 during a 12-month period, then defendants will only be convicted of a single misdemeanor rather than one misdemeanor for each transaction charged in count II. Accordingly, defendants' motion to dismiss the indictment is hereby denied.

## II

## BILL OF PARTICULARS

■ In ruling on defendants' motion for a bill of particulars, this Court is guided by its decision in *United States v. Greater Syracuse Bd. of Realtors,* 438 F.Supp. 376 (N.D. N.Y.1977). The purpose of a bill of particulars "is to apprise a defendant of the nature of the charges against him, so that he can adequately prepare a defense, avoid prejudicial surprise at trial, and plead double jeopardy in any subsequent related action." *Id.* at 379 (citations omitted). If defendants are supplied with enough facts to enable them with reasonable diligence to prepare their defenses, then the Court in its discretion may deny the motion. *Id.* Here, the Court concludes that counts I and II are sufficiently detailed to meet the above standards. However, with respect to count III,

the Court finds that some particularization is required.

Count III charges the defendants with concealing material facts and causing to be made certain false statements concerning transactions in currency. Such actions are alleged to violate 18 U.S.C. §§ 1001, 1002 (1976). The Government has not alleged what statements it contends are false, nor has it alleged the material facts which it contends the defendants concealed. While the Government need not disclose the evidentiary details of its case, the Court finds that defendants should be apprised of these basic details concerning count III. Accordingly, defendants' motion for a bill of particulars is hereby denied with respect to counts I and II, and hereby granted with respect to count III.

### III

### SEVERANCE

Joinder of the three defendants in the present case is proper under Rule 8 of the Federal Rules of Criminal Procedure. Nevertheless, defendants seek separate trials pursuant to Fed.R.Crim.P. 14 which allows the court to order severance from prejudicial joinder. At the present time, no showing of "substantial prejudice" has been made. *United States v. Lilla,* Nos. 81–CR–53, 54, 55, slip op. at 3–4 (N.D.N.Y. Oct. 23, 1981) (citing *United States v. Weisman,* 624 F.2d 1118, 1129–30 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980)). Thus, it would appear that these motions are premature.

Defendant Konefal requests severance because he claims a need for the testimony of his codefendants. As this Court observed in *United States v. Bennett,* No. 81–CR–95, slip op. (N.D.N.Y. May 4, 1982), when such a claim is made, the defendant must demonstrate that the codefendant would in fact testify and waive his fifth amendment privilege. *Id.* at 7–8 (citing *United States v. Haro-Espinosa,* 619 F.2d 789, 793 (9th Cir.1979); *United States v. Lyles,* 593 F.2d 182, 192 (2d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d

789 (1979)). Inasmuch as defendant Konefal has failed to make such a showing, his motion to sever is hereby denied without prejudice. Should Konefal come forward with the requisite showing, his motion to sever may be renewed at trial.

Defendants Hodge and Share argue that severance is required under the rule announced in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). These defendants claim that certain testimony of defendant Konefal before the grand jury is inculpatory with respect to themselves. The Court in *Bruton* held that when such statements are received into evidence, a limiting instruction to the jury will *not* cure the prejudice to the inculpated defendant. *Id.* at 137, 88 S.Ct. at 1628.

The Government asserts that all references to defendants Hodge and Share will be redacted from Konefal's grand jury testimony and, therefore, no prejudice will result from introduction of this testimony into evidence. The Supreme Court recognized the possibility of redaction in *Bruton, id.* at 134 n. 10, 88 S.Ct. at 1626 n. 10, and this procedure has been accepted in the Second Circuit. *United States v. Lord,* 565 F.2d 831, 839 (2d Cir.1977). The Court has examined defendant Konefal's grand jury testimony *in camera* pursuant to Fed.R. Crim.P. 14, and concludes that redaction will cure any potential *Bruton* problems. *See also* 8 J. Moore, *Moore's Federal Practice,* ¶ 16.07 at 16–156 to 157 (2d ed. 1982). Accordingly, defendant's motion to sever is hereby denied without prejudice and with leave to renew at the time of trial should the redaction procedure cause "substantial prejudice."

### IV

### SUPPRESSION

Defendant Konefal has made a motion to suppress various materials and statements. As a target of a grand jury investigation, Konefal was not entitled to the full panoply of sixth amendment rights. Until adversary proceedings had been commenced against him, *United States v. Vasquez,* 675

F.2d 16 (2d Cir.1982) (per curiam); *United States v. Jamil,* 546 F.Supp. 646 (E.D.N.Y. 1982), the Government was not obligated to provide Konefal with free counsel. Konefal's argument to the contrary is rejected and the Court hereby denies the motion to suppress the grand jury testimony on the basis that Konefal's sixth amendment rights were violated.

■ As grounds for the suppression of certain letters written by him, Konefal asserts that the documents are undated or irrelevant. Relevancy or competency of evidence are grounds for exclusion at trial, Fed.R.Evid. 402, not for suppression. Thus, the Court denies defendant's motion to suppress certain documents claimed to be irrelevant. Defendant may object at trial to the introduction of irrelevant evidence.

■ Defendant Konefal seeks to suppress two letters written by him to a Utica, New York attorney on the grounds of attorney-client privilege. The court has reviewed defendant's grand jury testimony and believes that the letters may well be beyond the scope of the privilege. However, as with the relevancy claim, the Court finds defendant's motion to be premature. Defendant may object to the introduction of these letters at trial.

■ Konefal's final request for suppression deals with certain tape recordings made by undercover agents during the course of the investigation leading up to the indictment. It appears, and the Government admits, that a tape recording of a conversation involving defendants Konefal and Share on July 2, 1982 is missing or otherwise unaccounted for. Thus, in defendant Konefal's view, the appropriate sanction is suppression of the remaining tapes. *United States v. Consol. Laundries, Inc.,* 291 F.2d 563 (2d Cir.1961); *United States v. Fishel,* 324 F.Supp. 429 (S.D.N.Y. 1971).

The Government is under a continuing duty to preserve discoverable evidence. Failure to do so places its prosecution in jeopardy. *United States v. Grammatikos,* 633 F.2d 1013, 1019 (2d Cir.1980). However,

this Circuit has cautioned against making rash determinations such as that suggested by defendant Konefal. Rather, the better course to follow is for the Court to make a "case-by-case assessment of the government's culpability for the loss, together with a realistic appraisal of its significance when viewed in light of its nature, its bearing upon critical issues in the case and the strength of the government's untainted proof." *Id.* at 1019–20; *see also United States v. Bufalino,* 576 F.2d 446 (2d Cir.), *cert. denied,* 439 U.S. 928, 99 S.Ct. 314, 58 L.Ed.2d 321 (1978); *United States v. Alfonso-Perez,* 535 F.2d 1362 (2d Cir.1976); *United States v. Miranda,* 526 F.2d 1319 (2d Cir.1975). In the present case, it appears that a tape recording concerning defendants Konefal and Hodge made on or about July 2, 1982 is the only piece of evidence that is "missing."

At this Court's direction, the Government has submitted a memorandum prepared by the undercover agent who participated in that conversation. The Court has reviewed the memorandum *in camera* and concludes that suppression of the remaining tapes is not warranted at this time. As in *United States v. Augello,* 451 F.2d 1167 (2d Cir. 1971), *cert. denied,* 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802 (1972), the conduct of the Government in failing to preserve this recording does not rise to the level of bad faith or negligence necessary to require suppression. *Id.* at 1170. Should further discoverable evidence become unavailable, defendant may renew his motion to suppress. Accordingly, the Court denies the motion without prejudice.

V

## CHANGE OF VENUE

■ Defendant Konefal has moved for a transfer of this action to some other district on the ground of prejudicial pretrial publicity. This motion is premature, *United States v. DiMasse,* No. 81–CR–128, slip op. at 4 (N.D.N.Y. May 20, 1982), and should be made at trial. Accordingly, the motion is denied without prejudice.

## VI

### DISCOVERY

#### A. *Grand Jury Testimony*

Defendants Hodge and Share have moved for an order allowing them to inspect the grand jury testimony of defendant Konefal. Such a request clearly falls outside the scope of Fed.R.Crim.P. 16. Because neither defendant has demonstrated a "particularized need" for disclosure of this testimony, *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958), their motion in this regard is denied. *United States v. Carrier*, No. 81–CR–70, slip op. at 2 (N.D.N.Y. Sept. 9, 1982). In addition, defendant Share's assertion that there was insufficient evidence before the grand jury is not grounds for discovery of this information. *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974) (citing *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956)); *United States v. Carrier*, slip op. at 1–2.

#### B. *"Brady" Material*

Each defendant has requested that the Government disclose any exculpatory material in its possession. The Government acknowledges that it has a continuing duty to supply defendants with this material under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Therefore, the Court denies defendants' motion in this regard.

#### C. *Witness Lists and Impeachment Materials*

Defendants Hodge and Konefal have requested that the Government furnish them with the names of all persons whom the Government intends to call as witnesses. In addition, defendants seek disclosure of various impeachment materials with respect to these prospective witnesses. The defendants have only made an "abstract, conclusory claim that such disclosure [is] necessary to [their] proper preparation for trial." *United States v. Cannone*, 528 F.2d 296, 301–02 (2d Cir.1975). Under these circumstances it would be an abuse of this Court's discretion to order such disclosure. *United States v. DiMasse*, No. 81–CR–128, slip op. at 2. *See also United States v. Abrams*, 539 F.Supp. 378, 390 (S.D.N.Y. 1982) (ordering impeachment information to be disclosed only after witness testifies at trial).

#### D. *Inspection of Materials Seized Pursuant to Warrant*

Defendants Hodge and Share have moved for an order directing the Government to turn over all materials seized in two searches of their offices. The Government has indicated that it will provide counsel with virtually unlimited access to these materials. Accordingly, the motion is denied.

#### E. *Inspection of Bonds and Checks*

Defendant Konefal has requested access to all bonds, checks, and instruments referred to in count II of the indictment. As with the material seized pursuant to the warrant, the Government has indicated that counsel will be provided access to these documents and notes. Therefore, defendant's motion for production is denied.

#### F. *Statements of Defendants*

Pursuant to Fed.R.Crim.P. 16(a)(1)(A), defendants are entitled to inspect and copy their own statements. The Government has again indicated its willingness to comply with defendants' requests. In this regard, the Court has been informed that copies of all written statements have been supplied to counsel for the respective defendants. In addition, transcripts of all recorded conversations have similarly been provided to defendants' counsel. Where no transcripts have been made, the Government has indicated that the actual tapes are available for review.

The problem that has arisen in the instant case is the request for statements of the remaining codefendants by each defendant. Thus, defendant Konefal requests all statements made by defendants Hodge and Share, and so on. The Government has

taken the position that Rule 16 does not require disclosure of statements by one defendant to his codefendants or disclosure of the statements of coconspirators.

As noted above, the essence of the present indictment is a conspiracy to violate the Currency and Foreign Transactions Reporting Act. As such, all statements made by a coconspirator of a party during the course of and in furtherance of the conspiracy are admissible against that party as non-hearsay statements. *See* Fed.R.Evid. 801(d)(2)(E). It is largely for this reason that defendants have requested discovery of their codefendants' statements.

In *United States v. Percevault,* 490 F.2d 126 (2d Cir.1974), the Second Circuit rejected a very broad reading of Rule 16 of the Federal Rules of Criminal Procedure and held the statements of coconspirators were not discoverable before trial when the Government intended to call the declarants as witnesses. In addition, the court held that the Jencks Act, 18 U.S.C. § 3500 (1976), prohibited the trial judge from disclosing such statements prior to the witness testifying at trial. The Second Circuit has not had the opportunity to address the discoverability of coconspirator's statements when the Government does not intend to call the declarant as a witness at trial. *Percevault,* however, remains the law in this Circuit. *See United States v. Fatico,* 603 F.2d 1053, 1058 (2d Cir.1979) (declining to overrule *Percevault* in the absence of treatment of the issue en banc).

In the case at bar, defendants have requested statements of their codefendants, all of whom are coconspirators. Thus, the Government will not be calling any of them as witnesses at trial, and a strict adherence to the rule in *Percevault* is not required. While defendants failed in their memoranda to cite a single case in support of their requests, counsel for defendant Share brought two cases to the attention of the Court at oral argument. *United States v. Turkish,* 458 F.Supp. 874 (S.D.N.Y.1978), aff'd, 623 F.2d 769 (2d Cir.1980), and *United States v. Agnello,* 367 F.Supp. 444 (E.D.N.Y.1973). The court in *Turkish* ordered the

Government to disclose all statements "made during the course of and in furtherance of the conspiracy by those co-conspirators whom the government does not intend to call as witnesses at trial." 458 F.Supp. at 882. Disclosure was ordered in *Agnello* for all statements made by coconspirators which the government intends to introduce against the defendant as his own. 367 F.Supp. at 449.

In the absence of a definitive word from Congress or the Supreme Court, the commentators have generally accepted the decision of the court in *Turkish* as the "modern view." *See* 2 C. Wright, *Federal Practice and Procedure,* § 253 at 50 (2d ed. 1982); 8 J. Moore, *supra,* ¶ 16.05[1] at 16–77. Moreover, the lower courts have generally followed this policy of ordering disclosure of coconspirator's statements where the declarant will not be testifying for the Government at trial. *See, e.g., United States v. McMillen,* 489 F.2d 229, 230–31 (7th Cir.1972), *cert. denied sub nom. Siegel v. McMillen,* 410 U.S. 955, 93 S.Ct. 1420, 35 L.Ed.2d 687 (1973); *United States v. Thevis,* 84 F.R.D. 47, 56–57 (N.D.Ga.1979); *United States v. Turkish,* 458 F.Supp. at 887; *United States v. Brighton Bldg. & Maintenance Co.,* 435 F.Supp. 222, 233 n. 20 (N.D. Ill.1977), aff'd, 598 F.2d 1101 (7th Cir.1979); *United States v. Bloom,* 78 F.R.D. 591, 618 (E.D.Pa.1977); *United States v. Fine,* 413 F.Supp. 740, 743 (W.D.Wis.1976); *United States v. Agnello,* 367 F.Supp. at 448.

This Court rejected such a view in *United States v. Greater Syracuse Bd. of Realtors,* 438 F.Supp. 376, a criminal prosecution for conspiracy to violate the antitrust laws. In *Greater Syracuse Bd. of Realtors,* the Court held that statements of codefendants and coconspirators were exempted from pretrial discovery by virtue of Rule 16 and the Jencks Act. *Id.* at 383. To the extent that the decision in *Greater Syracuse Bd. of Realtors* is read as an absolute prohibition on pretrial disclosure of the statements of coconspirators, *see* 8 J. Moore, *supra,* ¶ 16.-05[1] at 16–77 n. 14.1, the Court declines to adhere to that decision. However, in circumstances such as that presented in *Great-*

*er Syracuse Bd. of Realtors,* where there were 15 defendants in an antitrust conspiracy case and pretrial disclosure would unnecessarily reveal business secrets, the Court may again follow its earlier course of non-disclosure.

In the case at bar, there are three indicted coconspirators each seeking statements of the other two. Inasmuch as the Government must disclose to each defendant his own statements, the Court finds that fairness and the interests of justice require disclosure of the requested information. Accordingly, the Government is hereby directed to turn over to each defendant all statements in its possession made during the course of and in furtherance of the subject conspiracy by defendants Konefal, Hodge, and Share.

With regard to the memorandum of the July 2, 1982 phone conversation discussed in section IV *supra,* the Court finds that defendants are entitled to inspect and copy this document. Defendants Konefal and Hodge were parties to the conversation and, therefore, anything said therein by either defendant may be introduced at trial against all three defendants pursuant to Fed.R.Evid. 801(d)(2)(E). Thus, the discussion relating to statements of coconspirators applies with equal force to this memorandum. However, in its present form, the memorandum contains references to matter irrelevant to the instant indictment. Accordingly, the Government is directed to furnish defendants with copies of this memorandum redacted to exclude the first two paragraphs. The Assistant United States Attorney shall furnish the Clerk of the Court with a complete copy of this memorandum to be sealed and made a part of the record in this case.

### G. *Statements of James Corvette*

Defendant Konefal has requested disclosure of all facts concerning the participation of one James Corvette a/k/a Delphino in the alleged conspiracy. In addition, Konefal has asked for disclosure of all statements by Corvette and/or transcripts of recordings in which Corvette is a party.

Mr. Corvette is not a defendant in this action, and the Government has stated unequivocally that he was never an informer or agent of any governmental agency. Moreover, it appears as though Corvette is presently missing and will certainly not be called as a witness at the trial. According to the Government's response to defendants' motions, Corvette was at one time a target of a joint investigation by the Drug Enforcement Administration and the Internal Revenue Service being conducted from Santa Ana, California. This investigation was concluded after the disappearance of Corvette in or around June of 1982.

Defendant Konefal has failed to cite any authority for the disclosure of this information. The Government asserts, and this Court agrees, that such disclosure is not required by either the Jencks Act or the Federal Rules of Criminal Procedure. Defendant has merely claimed that this material will aid in the preparation of his defense. Without more, defendant has not shown that he is entitled to this material. Accordingly, the motion is denied.

### H. *Phone Logs*

Defendant Konefal has requested disclosure of the dates, times, and durations of all telephone conversations placed by Government agents to Konefal at his home. Konefal asserts that such information is material and will be helpful to his defense of coercion and entrapment.

Under Fed.R.Crim.P. 16(a)(1)(C), the Government is required to permit disclosure to a defendant of all papers and documents in its possession, custody, or control which are "material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant." Thus, under the plain language of the Rule, defendant is entitled to these logs. Accordingly, the Government is hereby directed to provide defendant Konefal with the phone logs that are in its possession, custody or control. If such logs are unavailable, the Government shall make ev-

708

ery effort to account for their whereabouts and provide defendant with a written explanation for the same.

## I. *Interview Notes*

 Lastly, defendant Konefal has requested copies of the notes taken by the participants in an interview of defendant Konefal conducted on February 9, 1983. Defendant has already been provided with a copy of the memorandum of that interview, but seeks the individual notes taken by Assistant United States Attorney Jones and Special Agents Corey and O'Reilly. This request is clearly beyond the scope of the criminal discovery rules and is hereby denied. Should the agents testify at trial about this conversation, defendant may have the notes, if any, for cross examination. The prosecutor's notes are privileged and, therefore, unavailable.

## VII

## CONCLUSION

In sum, the Court denies defendants' motion to dismiss the indictment, and grants the motions for a bill of particulars as to count III. Defendants have not shown any "substantial prejudice" to warrant severance, and the Court finds that redaction of the grand jury testimony of defendant Konefal will adequately protect defendants Hodge and Share. With regard to defendant Konefal's motion to suppress, this motion is denied without prejudice in accordance with section IV *supra.* Defendant Konefal's motion for a transfer of this action is denied without prejudice as being premature. As to defendants' discovery requests, they are granted in part and denied in part. These discovery motions are treated in section VI *supra.*

It is so Ordered.