UNITED STATES of America, Appellee,

v.

Gary JACKSON, a/k/a
"Roe", Appellant.

No. 84–5156.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 3, 1984.

Decided March 21, 1985.

---

Ronnie M. Mitchell, Fayetteville, N.C. (Christopher B. Godwin; Harris, Sweeny & Mitchell, Fayetteville, N.C., on brief), for appellant.

Francis J. Martin, Dept. of Justice, Washington, D.C. (Samuel T. Currin, U.S. Atty., Raleigh, N.C., on brief), for appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

Gary Jackson appeals from his convictions in the United States District Court for the Eastern District of North Carolina of conspiracy to illegally possess drugs with intent to distribute and to unlawfully acquire and possess food coupons, 18 U.S.C. § 371; various drug and illegal food stamp offenses, 7 U.S.C. § 2024(b), 21 U.S.C. § 841(a)(1); and use of a telephone in the scheme, 21 U.S.C. §§ 843(b) and (c). Finding no prejudicial error, we affirm.

I

On the conspiracy count the government offered proof that Jackson participated in the conspiracy with Preston Jackson, Gary's nephew, and Michael Thompson, another relative, from April 7, 1983, until November 29, 1983. The district court admitted into evidence out of court statements implicating Jackson made by Preston Jackson and Thompson to government agents prior to April 7 concerning drug, gun and food stamp deals arranged by the undercover agents. The government also presented a taped phone conversation between agents and Gary Jackson arranging a deal for April 7, evidence that Preston Jackson and Thompson consummated deals outside Gary Jackson's house and evidence that Gary Jackson backed out of an arranged deal on April 1. The government did not establish face to face dealings between Gary Jackson and undercover agents.

Jackson first argues for reversal because the district court followed inadequate pro-

cedures in admitting the out of court statements of Preston Jackson and Thompson made to government agents under Fed.R. Evid. 801(d)(2)(E), which makes co-conspirator's statements during the course of and in furtherance of the conspiracy non-hearsay that is admissible against the defendant conspirator. Jackson contends that the court must conduct an on the record, away from the jury hearing to determine whether the government presented sufficient independent evidence of the conspiracy before invoking the co-conspirator statement rule. Jackson also argues that the trial judge erred in not making an explicit ruling that sufficient independent evidence exists and in not submitting the admissibility issue to the jury.

 Jackson is correct that the court may admit co-conspirator's out of court statements under Rule 801(d)(2)(E) only if the government presents substantial independent non-hearsay evidence of the conspiracy and Jackson's connection to it. *United States v. Stroupe*, 538 F.2d 1063, 1065 (4th Cir.1976). However, as we have recently held, the trial court need not hold an on the record, away from the jury hearing to determine the admissibility question. *United States v. Hines*, 717 F.2d 1481, 1488 (4th Cir.1983). Moreover, the trial judge need not make an explicit ruling that sufficient independent evidence of the conspiracy exists before admitting the hearsay. Instead, the court may admit the hearsay and later declare a mistrial, or, when appropriate, exclude the hearsay and give a limiting instruction, if the government fails to connect up with independent evidence. *See Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); *Hines*, 717 F.2d at 1488. Finally, this court has rejected Jackson's argument that the jury should make the admissibility determination. *Id.* Hence, Jackson's allegations of error in the procedure followed by the district court to invoke Rule 801(d)(2)(E) have no merit.

## II

 Jackson next argues that the district court erred in admitting out of court statements of co-conspirators made in March because the indictment charges him with conspiracy beginning on April 7. Hearsay statements are admissible under Rule 801(d)(2)(E) even if no formal charge of conspiracy exists so long as the government establishes independent evidence of the conspiracy. *United States v. Jones*, 542 F.2d 186, 202 n. 31 (4th Cir.1976). In addition, upon joining the conspiracy, earlier statements made by co-conspirators after inception of the conspiracy become admissible against the defendant. *United States v. LeRoux*, 738 F.2d 943, 949–50 (8th Cir.1984). The evidence of consummation of deals outside Jackson's house in the middle of March and the deal arranged between Jackson and agents at the end of March constitute substantial independent evidence that fulfills the government's preponderance burden of proving the conspiracy's existence in March and Jackson's connection to it at that time. Hence, the trial court properly admitted the co-conspirator's statements made in March under Rule 801(d)(2)(E) even though the indictment did not charge Jackson with conspiracy during March. Moreover, even if the evidence did not show Jackson's connection to the conspiracy in March, the taped phone call arranging the April 7 deal constitutes ample independent evidence that Jackson joined the conspiracy in early April making the earlier statements of co-conspirators admissible against him.

 Jackson further argues that the district court failed to provide adequate limiting instructions to the jury to limit their consideration of the out of court statements. The district court instructed the jury that where the statements established acts of Jackson occurring prior to the acts for which he was charged, the jury must limit the use of the evidence to issues of intent. The instruction is consistent with Fed.R.Evid. 404(b), and Jackson was not entitled to further instructions limiting the use of the properly admitted statements.

## III

Jackson next alleges that the trial court erred in denying his motion for a bill of particulars to obtain the names of persons that the government alleged to be in the conspiracy and his motion in limine to exclude hearsay statements of persons not specifically charged as, or alleged to be co-conspirators. Although grant of a bill of particulars lies in the discretion of the trial court, the defendant may show abuse of discretion in denying the motion by proving unfair surprise. *See Wong Tai v. United States*, 273 U.S. 77, 82, 47 S.Ct. 300, 302, 71 L.Ed. 545 (1927). Jackson alleges unfair surprise in that the court admitted hearsay statements of Preston Jackson even though Jackson lacked notice that the statements would be used. Jackson's claim of surprise is not believable in view of the fact that Preston, a near kinsman and undisputed compatriot of Jackson's, had recently been convicted on federal charges arising out of the same transactions leading to Gary Jackson's convictions. Moreover, Jackson makes no showing that any surprise that occurred prejudiced him. Hence, we find no abuse of discretion in denial of the motion for the bill of particulars. Jackson was not entitled to exclusion of out of court statements of co-conspirators not specifically charged as or alleged to be co-conspirators because Rule 801(d)(2)(E) does not require that formal charges of conspiracy exist. *See Jones*, 542 F.2d at 202 n. 31. Hence, the trial court properly denied Jackson's motion in limine.

## IV

Jackson next argues that the government violated Fed.R.Crim.P. 16(a)(1)(A) in failing to disclose after a request for discovery statements of co-conspirators that contained statements that he made and statements that incriminated him. By its terms, Rule 16(a)(1)(A) requires the government to disclose oral statements of the defendant to be introduced at trial only if the defendant made the statement to a government agent during interrogation. *See United States v. Percevault*, 490 F.2d 126, 131 (2d Cir.1974). Moreover, Rule 16(a)(1)(A) in no way encompasses statements of co-conspirators simply because the statement implicates the defendant, and 18 U.S.C. § 3500(a) expressly makes statements of witnesses including co-conspirators, not discoverable if the witness is a prospective government witness. *See id.* Nevertheless, courts have found that statements of co-conspirators must be disclosed if the government does not intend to call the co-conspirator as a witness. *See United States v. Konefal*, 566 F.Supp. 698, 705–07 (N.D.N.Y.1983) (cases in accord cited therein).

We agree with the reasoning of the court in *Konefal* that the defendant is entitled to disclosure of statements of co-conspirators if the co-conspirator is not a prospective government witness and disclosure does not unnecessarily reveal sensitive information. *See* 566 F.Supp. at 706–07. Rule 801(d)(2)(E) permits the government to introduce the statements of a co-conspirator against the defendant as if they were his own, and protection against unfair surprise justifies a disclosure requirement. Although Rule 801(d)(2)(E) makes the co-conspirator's statements non-hearsay, the out of court statements nonetheless lack the indicia of reliability that attaches to testimony given in the solemn atmosphere of a court by a witness subject to cross examination. By giving the defendant notice of the statements, he may properly investigate their origin and if grounds exist, attempt to discredit the statements.

Moreover, the policies behind 18 U.S.C. § 3500(a), which limits discovery of statements, are not applicable because there is a lesser risk of intimidation of the witness or efforts to suborn perjury when the hearsay declarant is not a prospective witness. *See Percevault*, 490 F.2d at 131 (discussing policies behind the Jencks Act). The policy of protecting witnesses who agree to aid the government from intimidation is but tenuously implicated, and even if disclosure led the defendant to secure false testimony from the declarant, the jury would not like-

ly be misled since the government could impeach with prior inconsistent statements. In these circumstances, the risk of perjury is outweighed by the risk of unfair surprise to the defendant.

■ However, the discovery violation in this case does not entitle Jackson to reversal because he does not demonstrate prejudice. *See United States v. Jennings,* 724 F.2d 436, 444 (5th Cir.1984). Preston Jackson was convicted before Jackson went to trial, so Jackson knew or could have discovered the nature of the statements that the government would present. More importantly, Jackson makes no showing that he could have discredited the out of court statements properly admitted against him had he received prior disclosure of their contents. Hence, no sanction for the discovery violation is warranted.

### V

Finally, Jackson contends that the government violated his rights of compulsory process and confrontation in refusing to produce Preston Jackson, who was in federal prison in Memphis, Tennessee, so that Preston could testify at trial. Jackson also challenges denial of his petition for habeas corpus ad testificandum to secure Preston Jackson's presence that he filed after the trial began.

■ Ordinarily, if the government refuses to produce a witness in its custody who is necessary to the defense, and the court denies habeas, the defendant's compulsory process may stand violated. *See Clark v. Blackburn,* 632 F.2d 531, 533–35 (5th Cir.1980). But we hold that no violation occurred here.

■ The district court's power to issue the writ of habeas corpus ad testificandum derives from 28 U.S.C. § 2241(c)(5), which permits the court to order a prisoner brought into court when necessary. *Spears v. Chandler,* 672 F.2d 834, 835 (11th Cir.1982). The issuance of the writ lies in the discretion of the court. *United States v. Leon,* 679 F.2d 534, 539 (5th Cir. 1982). We hold that when, as here, the

defendant fails to petition for this habeas relief until after the beginning of trial, the trial judge has discretion in ruling on the petition comparable to his discretion in ruling on a motion for a continuance to secure a witness during trial, for the effect and purpose of the petition is the same as the motion for continuance. The defendant is not entitled to special consideration by the fortuity that the witness he seeks to secure is in custody.

■ The trial court abuses its discretion in not halting proceedings to allow the defendant to secure a witness when the witness appears to be prepared to give exculpatory testimony and the defendant has made reasonable efforts to secure the witness's presence before trial. *See Shirley v. North Carolina,* 528 F.2d 819, 822–23 (4th Cir.1975). Jackson failed to show that the trial court abused its discretion because no evidence exists in the record to show that Preston Jackson was prepared to give exculpatory testimony. Moreover, since Preston Jackson was convicted prior to the beginning of Jackson's trial, Jackson either knew or could have known of possible exculpatory testimony that Preston might give, yet he did not attempt to secure Preston's presence prior to trial. Hence, we find no violation of Jackson's compulsory process right.

AFFIRMED.

WILKINSON, Circuit Judge, concurring separately:

I cannot agree with the court that a defendant may demand pre-trial discovery of a co-conspirator's statement whenever the government does not intend to call the co-conspirator to testify. I would prefer not to reach this issue, given the absence of any prejudice to the defendant, but as the majority elects to do so, I offer a brief response. First, the majority belittles the risk that a declarant co-conspirator will be harassed or intimidated. Next, it converts a perceived danger of "unfair surprise" to defendants into an inflexible requirement of pre-trial disclosure. The result is a re-

grettable turn toward rigidity in the law of criminal discovery.

## I

I do not share the majority's conclusion that the interest in protecting a co-conspirator declarant from intimidation is but "tenuously implicated." In expressing such concerns, I doubt that I am seeing ghosts. The stakes for those accused are high. The co-conspirator's statement materially assists the prosecution's case. The co-conspirator, moreover, is well known to those on trial. The dangers of threat or bribe are acute in the conspiracy context, where mutual associates, not all of whom may have been arrested, share common interests in pressing a declarant to disown whatever damaging remarks he may have made.

"Fear of intimidation of witnesses and concern over efforts to suborn perjury were not flights of fancy by those who drafted Rule 16." *United States v. Percevault,* 490 F.2d 126, 131 (2d Cir.1974). These fears do not evaporate when the statement is to be introduced through the testimony of federal agents pursuant to the co-conspirator exception to the hearsay rule, Fed.R.Evid. 801(d)(2)(E). However admitted, the adverse impact of the co-conspirator's remarks remains, along with the incentive to defendants to have them recanted. It is true, as the majority notes, that testimony secured by a defendant repudiating the co-conspirator's prior incriminating declaration can be impeached. This is equally true, however, where the co-conspirator testifies, yet the possibility of the government's impeaching its own witness, Fed.R.Evid. 607, did not lead the drafters of the Jencks Act to adopt the result the majority reaches here.

It is no answer to say that a prosecutor concerned about coercion may seek from the trial court a protective order under Fed.R.Crim.P. 16(d)(1), which provides that discovery otherwise available be "denied, restricted, or deferred" upon a sufficient showing. Here, the government would bear the burden of showing within a conspiracy the likelihood of untoward pressure it may not even be in a position to detect. Moreover, the majority's calculation that "the risk of unfair surprise" to defendants outweighs "the risk of perjury" in 801(d)(2)(E) situations renders the government's chances on a 16(d) motion problematical at best.

Indeed, nothing in Fed.R.Crim.P. 16 authorizes the majority's result. Rule 16(a)(1)(A) requires the government to disclose to the defendant his own statements which the government intends to offer at trial and which were made to a person then known to the defendant as a government agent. It does not, as the majority acknowledges, confer a right to discover the statements of anyone else, and in particular it makes no mention of co-conspirators. To attempt, as some courts have done, *see e.g. United States v. Konefal,* 566 F.Supp. 698, 706 (N.D.N.Y.1983); *United States v. Fine,* 413 F.Supp. 740, 742 (W.D.Wis.1976), to justify discovery of the co-conspirator's statement as a "vicarious admission" of the defendant is to make one person out of two and beg the question of undue pressure which may result.

## II

The respective interests of prosecution and defense can be amply accommodated short of the majority's result. The court errs in linking the danger of "unfair surprise" with a requirement of pre-trial disclosure. Traditionally, these have been distinct in the law of criminal discovery. Courts have been able to guard against the danger of unfair surprise to defendants without opening statements to discovery upon request.

Pre-trial disclosure of prior statements of government witnesses would appear as necessary to prevention of "unfair surprise" as discovery of the statements of declarant co-conspirators. Yet the Jencks Act, 18 U.S.C. § 3500(a), expressly disallows discovery of witness statements "until said witness has testified on direct examination in the trial of the case." Under § 3500(b) and (c), a defendant is entitled to

receive the contents of any statement relating to the subject of testimony once given, and the trial court may grant a continuance to allow the defendant reasonable time to prepare for use of the statement at trial.

I see no reason not to apply that same approach here. In the great majority of cases, whether the statement be that of a prospective witness or a declarant co-conspirator, the government will disclose early in the interest of simple fairness, in the hope of achieving a favorable plea bargain, or from a desire to avoid interruption of the trial. In those cases where concern about intimidation prompts the prosecution to delay disclosure until the co-conspirator statement is admitted, the court can grant the defendant a reasonable continuance to assess the co-conspirator statement in the government's possession and to prepare to respond. Under any scenario, there will be no "unfair surprise."

### III

I share with the majority the belief that a criminal trial must be a sober quest for truth and justice and not a game of evidentiary hide and seek. The real question here is a rather speculative one: whether it is more likely that prosecutors will abuse a Jencks-type device to delay disclosure of co-conspirator statements unjustifiably or whether defendants will use pre-trial discovery to pressure co-conspirators into perjured testimony. Because the balance of bad faith does not for me fall so heavily against the government, I write, with respect, this separate statement of my views.