**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles BUTLER, Defendant–Appellant.**

No. 88–5022.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 13, 1989.

Decided Sept. 19, 1989.

Ira N. Loewy (Donald I. Bierman, Bierman, Shohat & Loewy, P.A., Miami, Fla., on brief), for defendant-appellant.

Donna Helen Triptow, Asst. U.S. Atty. (Breckinridge L. Wilcox, U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

ERVIN, Chief Judge.

On July 15, 1987, a jury found Charles Butler guilty of multiple violations of federal narcotics laws. Butler now appeals from his convictions for three of those violations. Specifically he challenges his conviction on one count of engaging in a Continuing Criminal Enterprise ("CCE") in violation of 21 U.S.C. § 848 and two counts of conspiracy to import and distribute heroin in violation of 21 U.S.C. §§ 952 & 963. Finding no merit in Butler's assertions of error, we affirm his CCE conviction. Butler's conspiracy convictions, however, must be vacated because they were proved by the government as predicates to the CCE violation.

## I.

The evidence presented at Butler's thirteen day trial indicates that Butler has been a major player in the Baltimore drug world for some time. Most of this evidence came from the testimony of David Richeson, one of Butler's associates. Together, Butler and Richeson controlled a sham import-export business known as Quazar International. Through Quazar, Butler and Richeson put together an import network that brought heroin into the United States first from Nigeria and later through Pakistan. The testimony of several convicted drug dealers also reveals that Butler orchestrated a sizeable heroin wholesale operation which marketed the heroin he imported into Baltimore.

According to Richeson, Quazar used the services of Emmanuel and Johnmark Nwolise to buy and bring heroin in from Nigeria. In 1982 and 1983, Emmanuel Nwolise made several trips to Nigeria, financed by Butler through Quazar, to purchase heroin. On some of these trips he obtained heroin through a Nigerian Customs Inspector named George Nwokeji. Butler accompanied Emmanuel Nwolise on at least one trip in May of 1983 and returned with one-quarter kilo of heroin. On other trips Emmanuel was accompanied by his brother, Johnmark. Johnmark Nwolise and Naurice Leigh also made an unsuccessful trip for Butler to bring back heroin from Sierra Leone.

By mid–1984, however, relations between Butler and the Nwolise brothers became strained, in part due to the unsuccessful venture in Sierra Leone. About this time Quazar hired Dawar Shaikh, a Pakistani national who was supposed to develop legitimate business for Quazar in the Middle East. Shaikh turned out to have few business skills but did have drug contacts in Pakistan. Richeson testified that he and Shaikh made three trips to purchase heroin in Pakistan. Although Butler provided the cash for each of these trips, Richeson never informed Shaikh of Butler's identity or involvement. Before each trip, Butler instructed Richeson on the quantity and quality of heroin to be brought back. In Pakistan, Shaikh purchased heroin from a jeweler named Mahmood Ul–Hassan. Shaikh then flew back to Toronto, Canada with the heroin. Butler would return separately to the United States and then drive to Toronto to bring Shaikh and the heroin to Baltimore.

These trips came to an end in May of 1985, when Shaikh was arrested. Shaikh agreed to cooperate with authorities who used him to set up a reverse sting operation to catch Richeson. On May 16, 1985, Shaikh called Richeson and offered to sell him a kilo of heroin which he claimed to have purchased with his own funds during their last trip to Pakistan. Richeson met Shaikh at his apartment and, under video surveillance, took possession of a yellow bag containing a small amount of heroin and four kilo's of a lookalike substitute prepared by agents of the Drug Enforcement Administration.

When Richeson left Shaikh's apartment, police followed him to a parking lot in West Baltimore where he met Butler. Officers watched as Richeson took a yellow bag out of his car and gave it to Butler. Butler put the bag in his trunk and each man drove off in different directions. Richeson was stopped and arrested shortly thereafter. The officers decided not to arrest Butler right away, however, and instead tried to follow him in the hope of determining to

whom he might be delivering the sham heroin. Butler, though, realized that he was being followed and managed to elude his trackers.

As luck would have it, evidence collected in another ongoing drug investigation revealed Butler's actions later that day. As part of an unrelated investigation, police had tapped a phone belonging to Junior Ison, a Baltimore drug dealer. Taped conversations from May 16, 1985, indicate that Butler drove to Ison's home and that Ison purchased the four kilo's of sham heroin. Later taped conversations suggest that this sham heroin caused a great deal of confusion and discontent in Baltimore's drug world. Butler, however, continued to elude the police. He was finally arrested some nineteen months later when police, acting on an informant's tip, discovered Butler at his home.

Following his arrest, a grand jury returned a superseding indictment charging Butler with seventeen violations of federal narcotics and income tax laws.[1] Counts 14–17, charging income tax evasion, were severed and have since been resolved in separate proceedings. On July 1, 1987, a jury found Butler guilty on all thirteen remaining counts. Butler has not appealed from his convictions for the various narcotics violations charged in counts 4 through 13. Instead he challenges only his convictions under Count 1 for conducting a CCE, and under counts 2 and 3 for conspiracy to import and distribute heroin.

## II.

Butler raises three challenges to his CCE conviction. First, he asserts that the trial court erred in dismissing his motion for a bill of particulars on the CCE count. Second, he charges that the trial court abused its discretion by rescinding, for financial reasons, an order summoning Emmanuel Nwolise to testify at government expense. Third, he argues that the government's evidence was insufficient to show that he organized, supervised or managed five or more persons as required by § 848(c). We will discuss each of these challenges in turn.

### A. Butler's Motion for a Bill of Particulars

Few federal crimes carry penalties as severe as those which Congress provided for drug kingpins found guilty of conducting a CCE. Section 848(a) provides a minimum penalty of 20 years in prison and a maximum of life without parole. But while the penalties are severe, the government bears a heavy burden of proof. To prove a violation of § 848, the government must show (1) a felony violation of the federal narcotics laws; (2) committed as part of a continuing series of at least three such violations; (3) perpetrated in concert with five or more persons; (4) for whom the defendant acted as an organizer, supervisor, or manager; and (5) that the defendant derived substantial income from this activity. *United States v. Lurz* 666 F.2d 69, 75 (4th Cir.1981), *cert. denied* 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982).

Count 1 of the superseding indictment merely tracked the language of the statute. It did not, as better practice recommends, allege specific facts which, if proved, would satisfy the five elements of a CCE offense. Butler recognizes, of course, that a CCE indictment may be superficially valid even if it does not specifically state the predicate acts on which the charge is premised. *See United States v. Lurz, supra; United States v. Amend,* 791 F.2d 1120 (4th Cir.), *cert. denied* 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 353 (1986). Butler argues, though, that the district court erred in denying his motion for a bill of particulars on Count 1. He claims that his defense was prejudiced, in the absence of a bill of particulars, because the indictment did not adequately specify the predicate federal narcotics violations or the particular persons whom Butler organized, supervised or managed.

---

1. The superseding indictment also charged Butler's wife, Ila, with one count of harboring a fugitive and charged Andre Hart with two counts of using a telephone to facilitate a drug transaction. The trial court entered a judgment of acquittal in favor of Mrs. Butler. The jury found Andre Hart not guilty on both counts against him.

"The purpose of a bill of particulars is to inform the defendant of the charges against him in sufficient detail and to minimize surprise at trial." *United States v. Hawkins*, 661 F.2d 436, 451 (5th Cir.1981), *cert. denied* 457 U.S. 1137, 102 S.Ct. 2967, 73 L.Ed.2d 1355 (1982). And "[a]lthough [the] grant of a bill of particulars lies in the discretion of the trial court, the defendant may show abuse of discretion in denying the motion by proving unfair surprise." *United States v. Jackson*, 757 F.2d 1486, 1491 (4th Cir.), *cert. denied* 474 U.S. 994, 106 S.Ct. 407, 88 L.Ed.2d 358 (1985). The Government contends that Butler was not surprised by the lack of specificity in the language in Count 1 because that count explicitly incorporated various other counts in the indictment as the necessary predicate narcotics offenses. Since those other counts specified the particular illegal acts charged and named the persons with whom Butler acted, the prosecution claims that there was no need for a bill of particulars. The Government asserts that such a bill would only have reiterated information provided in other counts of the indictment.

The government's argument is well taken. The Fifth Circuit has recognized that, in the context of § 848, allegations contained in other counts of an indictment may obviate the need for a bill of particulars. *See United States v. Hawkins*, 661 F.2d, at 451–452. *See also United States v. Zavala*, 839 F.2d 523 (9th Cir.1988) (count charging defendant with use of a telephone to facilitate a drug transaction was not void for vagueness where *other* counts in indictment stated details of defendant's alleged drug activity), *cert. denied* —— U.S. ——, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988). This is particularly true if, as is the case here, the information sought in the bill is contained in counts which are explicitly referenced as predicate offenses to the CCE charge. In this case, Count 2 recited the Government's allegations regarding Butler's Pakistani connections and his activities with Shaikh and Richeson. Count 3 similarly specifically set forth the government's allegations regarding Butler's control over Junior Ison and his heroin distribution network. Thus Butler cannot genuinely claim unfair surprise in the government's presentation of evidence of these two schemes as part of its CCE case.

The only significant part of the government's CCE case not spelled out in the indictment was Butler's involvement with the Nwolise brothers and the Nigerian importation schemes. On the facts of this case, however, it is difficult to credit Butler's assertion that he was prejudicially surprised by the government's reliance on these events to prove the CCE charge. Butler was aware of and had access to the transcripts from the government's prosecution of Emmanuel Nwolise and others with whom Butler carried out his narcotics business. In light of these alternative sources of information, it cannot be said that Butler was unfairly surprised by the trial court's denial of his motion for a statement of particulars. *Cf. United States v. Jackson*, 757 F.2d, at 1491 (finding no unfair surprise where CCE defendant was aware of government's evidence through trial of defendant's compatriot).

### B. Butler's Motion for a Writ of Habeas Corpus *Ad Testificandum*

■ Butler claims that the district court abused its discretion by failing to grant his motion for a writ of habeas corpus *ad testificandum*. By the writ, Butler sought to compel the government to produce Emmanuel Nwolise, who was in prison at the time, to testify on Butler's behalf. Judge Murray originally granted Butler's request, but when the U.S. Marshall's Office stated that the cost of producing Emmanuel would exceed $3,000, Judge Murray refused to waive the costs. Since Butler is indigent and could not pay the costs, Emmanuel did not testify. Butler claims that Emmanuel would have provided testimony which would have demonstrated that his actions were not supervised or organized by Butler.

District courts are empowered by 28 U.S.C. § 2241(c)(5) to issue the writ of habeas corpus *ad testificandum* to order a prisoner brought into court to give testimony. Rule 17(b) of the Federal Rules of Criminal Procedure authorizes district

courts to compel the government to bear the costs of producing witnesses if the defendant is financially unable to bear those costs. Although Butler's motion sought the issuance of a writ, his real challenge involves the court's denial of his request to have Emmanuel produced at government expense. Thus the district court's decision must be analyzed under Rule 17(b).

While a denial of a Rule 17(b) motion, where unjustified, may violate a defendant's right of compulsory process, such motions are committed to the trial court's sound discretion. *United States v. Jackson*, 757 F.2d, at 1492. In this circuit, a trial judge's discretion to deny a rule 17(b) motion made after the beginning of trial is "comparable to his discretion in ruling on a motion for a continuance to secure a witness during trial." *Id.* Thus a trial court acts within its discretion in denying a Rule 17(b) motion if the defendant has made no effort to secure the witness' testimony before trial. *Id. See also United States v. Rinchack*, 820 F.2d 1557, 1566 (11th Cir. 1987) (Rule 17(b) motion filed after beginning of trial was properly denied as untimely where defendant had three weeks between notice of trial date and beginning of trial in which to file motion). In this case, Butler waited almost two weeks after his trial had begun before moving for Emmanuel's production at public expense. In light of Butler's own procrastination, we decline to conclude that Judge Murray's denial of Butler's motion was an abuse of discretion.

#### C. Sufficiency of the Evidence

Among the five elements which the government must prove under § 848, Butler only contests the sufficiency of the evidence that he "organized, supervised or managed" five or more persons. He has not challenged the sufficiency of the evidence on any of the other elements. The prosecution claims to have presented evidence sufficient to show that Butler was the driving force behind a drug ring numbering at least fifteen persons. Butler argues that the evidence was not sufficient to show that he exercised the requisite degree

of influence or control over five or more persons.

Of course, in reviewing Butler's challenge, we are mindful that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■■■ The issue of what sorts of relationships satisfy § 848's requirement that a defendant "organize, supervise, or manage" other persons involved in federal narcotics crimes has received a good deal of judicial attention. Although no simple test has been developed, a number of guiding principles have emerged. First and foremost, the terms "organize, supervise, or manage" are used disjunctively in the statute such that it is only necessary that any one of these three relationships be shown to exist between the defendant and a particular underling or associate. *United States v. Apodaca*, 843 F.2d 421, 426 (10th Cir.), *cert. denied* —— U.S. ——, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988). Further, these terms should be applied in their ordinary sense as understood by the public or the business community. *See, e.g., United States v. Moya–Gomez*, 860 F.2d 706 (7th Cir.1988); and *United States v. Wilkinson*, 754 F.2d 1427 (2nd Cir.1985), *cert. denied*, 472 U.S. 1019, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985). "The defendant's relationships with the other persons need not have existed at the same time, the five persons involved need not have acted in concert at the same time or with each other, and the same type of relationship need not exist between the defendant and each of the five." *United States v. Apodaca*, 843 F.2d, at 426, *citing United States v. Becton*, 751 F.2d 250, 254–55 (8th Cir.1984), *cert. denied* 472 U.S. 1018, 105 S.Ct. 3480, 87 L.Ed.2d 615 (1985). *See also United States v. Aiello*, 864 F.2d 257 (2nd Cir. 1988); *United States v. Rhodes*, 779 F.2d 1019 (4th Cir.1985), *cert. denied* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986). Nor need the defendant have personal con-

tact with the five persons because organizational authority and responsibility may be delegated. *See, e.g., United States v. Alvarez,* 860 F.2d 801, 816 (7th Cir.1988); and *United States v. Apodaca, supra.* And while proof of a supervisory or managerial relationship requires a showing of some degree of control by the defendant over the other persons, such proof is not required to show that a defendant acted as an organizer. "[A]n organizer can be defined as a person who puts together a number of people engaged in separate activities and arranges them ... in one essentially orderly operation or enterprise." 2 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 58.21 (1977). Finally, the mere showing of a buyer-seller relationship, without more, is not sufficient under § 848. *United States v. Apodaca, supra.*

■ While the government claims to have presented evidence to show that Butler organized, supervised or managed at least fifteen persons, the statute only requires proof of five. Thus the evidence presented to the jury was sufficient to support the conviction as long as Butler's relationships with five persons meet the statute's requirements. Applying these principles, we are convinced that the evidence was sufficient to support the jury's decision. As Butler concedes, the government's strongest case involves Richeson and Shaikh. Richeson testified that on at least three occasions, he and Shaikh traveled to Pakistan to buy heroin for Butler. Butler provided the funds to cover travel expenses and to purchase the heroin, and gave instruction about the quantity and quality of heroin to buy. Richeson and Shaikh were clearly acting under Butler's supervision and control.

Richeson's testimony also supports the conclusion that Butler funded and directed, or at least organized, the heroin importation activities of Emmanuel and Johnmark Nwolise. The two brothers brought heroin back to Baltimore from Nigeria on several occasions. On at least one occasion, Johnmark attempted to bring heroin back from Sierra Leone on Butler's behalf. Riche-son's testimony, which was supported with financial records, reveals that Butler provided financial and logistical support for Emmanuel and Johnmark, helped put them in touch with heroin suppliers in Nigeria, and made the decisions about how much heroin to buy. Thus there was sufficient evidence to support the conclusion that Butler's relationship with Emmanuel and Johnmark satisfied the requirements of § 848(c).

Finally, the government produced evidence to support the conclusion that Junior Ison's drug dealing network was at least partially organized and supervised by Butler. Wiretap recordings demonstrated that Ison considered himself dependent on Butler for his heroin supplies in a manner analogous to an exclusive franchise dealership. On at least one occasion, according to the testimony of Yvonne Brittle, Ison was willing to forego purchasing heroin from other sources because of his indebtedness to Butler. Butler argues that Brittle's testimony proves nothing more than the existence of a buyer-seller relationship between Butler and Ison. We think, however, that Brittle's testimony was sufficient to show that Butler exercised a significant degree of control over how, when, and from whom Ison obtained his heroin supply. This control was sufficient to satisfy § 848(c). *See, United States v. Possick,* 849 F.2d 332 (8th Cir.1988) (although mere "fronting" of narcotics is not sufficient, management role may be proved by showing that defendant arranged delivery, and set price and credit terms).

While many of the persons claimed by the prosecution to be working under Butler's direction appear from the record to have had only minimal contact with Butler, there is sufficient evidence with respect to at least five persons to demonstrate that Butler occupied a position as an organizer, supervisor, or manager. Butler's CCE conviction was thus supported by the evidence and will not be disturbed on appeal.

### III.

■ Butler's final argument urges this court to vacate his conspiracy convictions if

his CCE conviction is upheld. This argument is well taken. A defendant convicted under § 848 may not also be convicted for any predicate conspiracy charges proved as elements of the § 848 offense. "Congress did not intend that an individual be punished under both § 846 (conspiracy) and § 848 (continuing criminal enterprise)." *United States v. Porter*, 821 F.2d 968, 967 (4th Cir.1987), *cert. denied* — U.S. ——, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988); *See also United States v. Raimondo*, 721 F.2d 476 (4th Cir.1983), *cert. denied* 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984). Since the superseding indictment expressly referenced the conspiracy charges as predicate offenses, Butler's conspiracy convictions under Counts 2 and 3 must be vacated. This case is accordingly remanded with instructions to the district court to vacate Bulter's convictions on Counts 2 and 3 of the superseding indictment.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.