**David HAYWOOD, in behalf of himself and others similarly situated, Appellants,**

**v.**

**J. C. BALL, N.C. State Highway Patrolman, in his Individual and official capacity, H. G. Grohman, Sheriff, New Hanover County, in his Individual and official capacity, R. I. Wark, Chief Jailer, New Hanover County, in his Individual and official capacity, Claude Foster, Deputy Sheriff, New Hanover County, in his Individual and official capacity, Appellees.**

**No. 78-1121.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1978.

Decided Nov. 17, 1978.

---

Charles L. Becton, Charlotte, N. C. (James E. Ferguson, II, Chambers, Stein, Ferguson & Becton, P. A., Charlotte, N. C., on brief), for appellants.

John F. Crossley, Wilmington, N. C. (Crossley & Johnson, Wilmington, N. C., on brief), for appellees.

Before BUTZNER, WIDENER, and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

Appellant Haywood brought suit in district court against four state law enforcement officers, for damages arising from defendants' failure to secure medical attention for Haywood for more than ten hours after he was involved in an automobile accident and was subsequently arrested and jailed for driving while intoxicated. Haywood alleged two separate causes of action: one under 42 U.S.C. § 1983 for violation of his constitutional rights under the eighth and fourteenth amendments (the federal claim), and one for common-law negligence (the state claim). This latter cause of action was heard by the district court in its exercise of pendent jurisdiction.

At the close of Haywood's evidence the court dismissed Foster, a deputy sheriff, from the case. At the close of all the evidence the court ruled that Groman, the sheriff, could be held liable only on the state claim under the doctrine of *respondeat superior*, if Wark, his chief jailer, was liable. Accordingly, the jury was only to determine the liability of Wark and Ball, a state trooper. In the court's instructions to the jury, he framed the standard of proof for the federal claim separately, in the now-familiar language of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), "deliberate indifference to serious medical needs." Standard negligence in-

structions were given on the state claim. The jury returned a verdict for both defendants on the federal claim, and a verdict for defendant Ball on the state claim, but found that defendant Wark had been negligent. The jury declared itself hopelessly deadlocked on the issue of damages, and the court declared a mistrial on this issue.

After post-trial motions, the district court ruled that since Haywood had not proved the federal claim, the court would accordingly dismiss the state claim which had been brought on a theory of pendent jurisdiction. Dismissal was without prejudice for Haywood to bring this claim in state court.

Haywood appealed, assigning as error the district court's dismissal of Foster from the case, its instructions on the burden of proof required under 42 U.S.C. § 1983, the federal claim, and its dismissal of the state claim after the jury had returned a verdict against defendant Wark. We affirm in part, reverse in part and remand for trial on the damages issue.

The facts, viewed in the light most consistent with the jury's verdict, show that plaintiff Haywood, driving a vehicle in which his stepson was a passenger, was involved in an accident at about 8:00 p. m. on September 26, 1975. Earlier that evening Haywood had consumed several doses of a home medicinal remedy prepared to ease the pain from a back injury; each dose consisted of one-quarter pint of corn liquor mixed with dissolved rock candy. Defendant Ball was dispatched to the accident scene, where he found Haywood dazed but suffering no visible injuries.[1] Ball, discerning that Haywood was intoxicated, took him by squad car to the New Hanover County Jail, where Haywood scored a very high value on a breathalyzer test.[2] Hay-

---

1. This was the most hotly contested issue at trial. One witness testified: "I saw [Haywood's] neck was bleeding and blood was coming from here. He was holding his hand just like—you know—like a dog's foot, you know, when it is broke; and he was crying." In contrast, another witness testified: "[T]he only sign of injury was a little swelling of the right

hand," and yet another said: "There was no bleeding anywhere."

2. N.C.Gen.Stat. § 20-138(b) (1978 Repl.Vol.) provides in part: "It is unlawful for any person to operate any vehicle upon any highway . . . within this State when the amount of alcohol in such person's blood is 0.10 percent or more by weight . . . ." Haywood scored 0.22 on the breathalyzer test.

wood was arrested and taken upstairs to the jail facilities.

Defendant Foster, a deputy sheriff, was on duty at the jail and processed Haywood upon his arrival. In Foster's deposition, which was put into evidence by Haywood in his case-in-chief, he stated that:

"[Haywood] was asked by both me and Deputy Emory if he was hurt or wanted to go to the hospital. His answer was 'no' on both occasions that I asked him. Since he did not appear to be hurt, I took him at his word. . . . I checked with him a few times before going off duty, and he appeared to be sleeping. . . ."

Apparently this was the extent of Foster's contact with Haywood.

At about 1:30 a. m. it became apparent to deputies who had come on duty at the midnight shift change that Haywood's injuries from the accident were of a serious nature. They called for a Rescue Squad car and one of them, Deputy Ronald Savage, following established procedure, called chief jailer Wark to inform him of this action. Wark told Savage to "cancel the call" [to the Rescue Squad], and refused to change this order despite the deputy's continued assertions that Haywood needed medical attention. Haywood remained in his cell until 7:30 a. m. when, under circumstances that are unclear, Haywood was finally taken to the hospital by the Rescue Squad. He was hospitalized for twenty-five days and incurred medical expenses, exclusive of doctor's fees, of $8,567.23.

■ *First.* At the conclusion of the plaintiff's case-in-chief the district court dismissed defendant Foster from the case, finding that the evidence established only that Deputy Foster had processed Haywood upon Haywood's arrival at the jail and subsequently looked in on him several times. We have reviewed the record and agree that the evidence was insufficient to establish liability on Foster's part on either the federal or state claims.

In his post-trial motions Haywood argued that Foster's "self-serving" deposition testimony was flatly contradicted by the testimony of Deputy Caroline Emory, a defense witness. Foster had said:

"[Haywood] was asked by both me and Deputy Emory if he was hurt or wanted to go to the hospital. His answer was 'no' on both occasions that I asked him."

Emory testified that she was present with Foster while Haywood was booked and processed, and that no one had ever asked him whether he wanted to be taken to the hospital.

As the district court notes, the difficulty with this argument is that the testimony of Deputy Emory was not before the court at the time Foster's motion for nonsuit was sustained. Therefore, we conclude that the district court properly dismissed Foster from the case at the close of plaintiff's evidence.

*Second.* Haywood argues that the trial court erred in instructing the jury that he could prevail on his federal claim only if the jury found "deliberate indifference to serious medical needs." *Estelle v. Gamble, supra.* Conceding, as he must, that this standard is appropriate for a convicted felon's eighth amendment claim, he nonetheless urges us to recognize a different standard on which relief may be granted for a pretrial detainee's claim which is grounded in the fourteenth amendment. This question was raised but not decided in *Loe v. Armistead,* 582 F.2d 1291, at 1294 (4th Cir., 1978).

■ Without expressing any view on the merits of this issue, we find that it is not properly before us on appeal. Fed.R. Civ.P. 51 states:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

The record shows the following colloquy after the court had given its instructions:

THE COURT: Does the plaintiff have any objection to this charge?

COUNSEL: None whatsoever, Your Honor.

The purpose of Rule 51 is to inform the trial judge of possible errors so that he may have an opportunity to correct them. *See* 5A Moore's Federal Practice ¶ 51.04 at 2521 (2d ed. 1977). An appellate court may, of course, exercise its discretion to consider plain error in spite of a failure to object below, where "it is apparent on the face of the record that a miscarriage of justice may occur." *Moore's, supra* at 2515–18. However, this case is not a proper one for invocation of the narrow exception to Rule 51. The district court's instructions were clear and unambiguous;[3] furthermore, the instructions, phrased in the language of *Estelle v. Gamble*, were absolutely consistent with Haywood's primary argument at trial that he was the victim of cruel and unusual punishment in violation of his rights under the eighth amendment. Only on appeal did he recognize the significance of his "back-up" argument, that as a pre-trial detainee his rights under the fourteenth amendment were implicated.

■ Therefore, we hold that Haywood, by failing to object to the district court's charge to the jury, has waived his right to assign as error the content of that charge.

■ *Third.* The district court entertained the common-law negligence claim in its exercise of pendant jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1965). However, after the jury returned a verdict for defendants on the federal cause of action, the court set aside the verdict for plaintiff on the state cause of action and dismissed the state claim, holding that there was no longer a basis for pendant jurisdiction. This was error.

The court's reliance on *Sigmon v. Poe*, 564 F.2d 1093 (4th Cir. 1977) and the other authority cited in its opinion, is misplaced. The crucial language of *Sigmon* is found at page 1096:

> Because the constitutional claims are without merit, *and they should be dismissed before a trial on the merits*, we see no basis for pendant jurisdiction to try the State law question in the federal courts. (Emphasis added)

In Haywood's case, the constitutional claim was a substantial one, and trial on the merits proceeded to conclusion. We think it would be a manifest injustice to require Haywood to re-try the negligence claim in state court after winning a verdict in the federal forum. Defendants concede that no authority supports such a result.

We are unmoved by defendants' rehash of the disputed evidence and protestations that Haywood's witnesses were of marginal credibility. The jury heard all the evidence, made resolutions of credibility, and determined that defendant Wark had been negligent.[4] This verdict has evidentiary support, and we reverse the district court's order setting aside the verdict and dismissing the state claims.

Therefore, this portion of the case is remanded to the district court for reinstatement of the jury verdict and for trial on the issue of damages.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

---

3. Haywood argues that it was unclear that the court had separated the federal and state causes of action in his instructions; he thought that the "deliberate indifference" instruction and the negligence instruction applied to both causes of action. In our view, the instructions were very clear. The court charged the jury: "Now, *this first cause of action* is grounded on a section of the Constitution . . . [the court then went on to describe 42 U.S.C. § 1983 as a vehicle for vindication of constitutional rights] . . . you will recall then, the standard set forth by the Supreme Court to constitute a cause of action under [§ 1983] as one that involved deliberate indifference to serious medical needs of prisoners. . . ." [The court later charged on the elements of the cause of action for common-law negligence.]

4. The district court ruled that if defendant Wark were found to be negligent, defendant Groman could be held liable on the state claim under the theory of *respondeat superior.*