**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 97-4101

NATHANIEL A. RICHARDSON, JR., a/k/a
Nathaniel Skeeter, a/k/a Skeet,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4149

JERMAINE CLEAVON GOLDEN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4213

AVERY MYRON LAWTON,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge.
(CR-96-153)

Argued: March 6, 1998

Decided: August 20, 1998

Before MOTZ, Circuit Judge, PHILLIPS, Senior Circuit Judge, and
KEELEY, United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Senior Judge Phillips wrote the
opinion, in which Judge Motz and Judge Keeley joined.

_____

**COUNSEL**

**ARGUED:** Douglas Fredericks, Norfolk, Virginia, for Appellant Gol-
den; Keith Loren Kimball, SYKES, CARNES, BOURDON &
AHERN, P.C., Virginia Beach, Virginia, for Appellant Richardson;
James B. Melton, Chesapeake, Virginia, for Appellant Lawton. Laura
P. Tayman, Assistant United States Attorney, Norfolk, Virginia, for
Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Nor-
folk, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Nathaniel Richardson, Jermaine Golden, and Avery Lawton chal-
lenge various aspects of their multi-count convictions and sentences
on drug distribution and conspiracy charges.**1** We affirm.

_____

**1** All three appellants were charged with Conspiracy to Distribute Crack
Cocaine and Heroin in Count One (21 U.S.C. § 846) and possession with
intent to distribute under 21 U.S.C. § 841(a)(1). Richardson was charged
separately with Engaging in a Continuing Criminal Enterprise in Count

2

I.

Evidence at trial (taken in the light most favorable to the Government) established that at the relevant times charged in the indictment, Richardson organized and operated a continuing drug trafficking operation in the Southside Gardens area of Portsmouth, Virginia. Beginning in 1992, Richardson and Joseph Dodd began purchasing crack cocaine in relatively large quantities which they then sold to lower-level dealers, including appellant Avery Lawton. Over the next two years, Richardson purchased ever increasing quantities of crack cocaine such that in early 1994 Richardson regularly purchased kilogram quantities of crack cocaine from a supplier named Michael Cromwell.

By 1995, Richardson's illicit business relationship with Cromwell was thriving to the point that Cromwell sent couriers to Suriname, South America to bring kilogram quantities of liquid and powder cocaine to the United States on Richardson's behalf. Cromwell then processed the cocaine, sometimes with the help of Richardson, and Richardson then sold quantities to several underlings, including Golden and Lawton.

As Richardson's drug business flourished so too did his lifestyle and the lifestyle of his associates. Richardson purchased expensive automobiles, and by the time of his arrest owned a number. See JA 333, 623, 787, 1081. His underlings, including Golden and Lawton, also owned relatively expensive vehicles. On one occasion in January 1995, Richardson paid $44,500 in cash for a 1991 Acura NSX automobile. See JA 580, 584-85.

As business flourished, however, members of the conspiracy began to get in trouble with the law. In February 1995, Richardson was arrested in Portsmouth for discharging a 9mm handgun. See JA 656-

_____

Two (21 U.S.C. § 848), Use of a Firearm in Relation to a Drug Trafficking Offense in Count Ten (18 U.S.C. § 924(c)(1)), and Money Laundering in Counts Fifteen and Sixteen (18 U.S.C. § 1956(a)(1)(B)(i)). Golden was also charged with carrying a firearm in relation to a drug trafficking offense in Count Eight.

3

660. That same month Golden was arrested for possession of crack cocaine and a 9mm handgun. In March 1995, Portsmouth police officers recovered a .38 caliber handgun, a .357 magnum revolver, and cash from Richardson's residence. See JA 744-47. In May 1995, Portsmouth police officers, exercising a valid search warrant at Joseph Dodd's residence, recovered 642.5 grams of crack cocaine. Richardson was present in the bedroom where the cocaine was found and evidence at trial established that this cocaine had originally been part of a larger three kilogram shipment that Richardson stored at the residence of one Fred Hamm. See JA 344-45.

Following his arrest on drug distribution charges in connection with the May search and seizure, Richardson expanded his enterprise into heroin distribution. During the fall of 1995 Richardson provided Hamm with heroin, instructed Hamm on where to buy cutting agents, and taught him how to dilute and package the product for street distribution. Lawton was also brought into this expansion of the drug trade and he began selling the product in the Southside area. See JA 948-50; 972-75; 1001-02; 1077-79.

Finally, in July 1996, seven defendants (including appellants here) were charged by a federal grand jury in a sixteen-count indictment alleging a criminal conspiracy to distribute crack cocaine and heroin. Richardson, Lawton, and Golden, each plead not guilty and were tried together. Following a jury trial, appellants were found guilty of various charges. Richardson was convicted of conspiracy, engaging in a criminal enterprise, possession with intent to distribute crack cocaine, and money laundering. Golden was convicted of conspiracy, possession with intent to distribute crack cocaine, and carrying a firearm in relation to a drug trafficking offense. Lawton was found guilty of conspiracy and possession with intent to distribute crack cocaine.

Appellants now appeal, with Richardson and Golden raising one joint issue and each appellant rasing several individual issues.

II.

Initially, Richardson and Golden challenge the district court's failure to sustain their challenge to the Government's exercise of peremptory strikes on the basis of race in violation of Batson v. Kentucky,

476 U.S. 79 (1986). Finding no evidence that the Government's race-neutral explanations were pretextual, we affirm.

Trial courts, in whose purview the enforcement of Batson and its progeny principally lies, are entitled to significant deference on the question of Batson challenges and may be reversed only if their findings are clearly erroneous. See Batson, 476 U.S. at 98 n.21. In analyzing a particular Batson challenge, a three-step process has been endorsed by the Court. First, "the defendant must make out a prima facie showing that the prosecutor has exercised peremptory strikes on the basis of race." Hernandez v. New York, 500 U.S. 352, 358 (1991). Once the requisite showing has been made, the burden shifts to the prosecutor to articulate race-neutral explanations for the strikes. See id. "Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." Id. at 359.

Appellants have not met their burden of showing the Government's asserted race-neutral explanations were pretextual. Following strikes for cause, the jury panel was composed of thirty-seven persons, of whom thirty were white, six black, and one Asian-American. Of the Government's ten peremptory strikes, four were used to strike black jurors. This left a jury of ten whites and two blacks, with another black jury member seated as an alternate. See JA 258, 262.

Following motion by defense counsel, the district court inquired into the reason for the four exclusions. One jury member, defense counsel conceded, could have been properly excluded by the Government. When asked to provide a nondiscriminatory reason for the exclusion of the other three, the Government responded that it excluded one juror because she appeared timid and afraid (JA 258) and excluded the other remaining jurors because of their age, 69 and 73 respectively.

We note initially that the court here went immediately to the second step in the Batson inquiry, requiring the Government to provide race-neutral explanations for the jury strikes. We therefore assume the establishment of a prima facie case of discrimination in the exercise of peremptory strikes. Our sole inquiry, therefore, is whether the district court clearly erred when it credited the Government's race-neutral explanations. It did not.

5

As to one of the three relevant jurors, the Government cited her demeanor and in particular her timid nature as a basis for the exclusion. See JA 258-59. This is a race-neutral explanation which has not been rebutted.

With regard to the remaining two jurors, the Government cited their age and a concern that the members would not be able to sustain concentration during what was expected to be a lengthy trial. See JA 259. These race-neutral explanations were never rebutted by defendants. Although Richardson points out that two of the other jurors who remained on the panel had a similar age as those excluded, this alone is not sufficient to meet the defendants' burden of proving intentional discrimination. Given the relatively small number of peremptories at issue (two) and considering the total number of strikes exercised (ten), it is not clearly erroneous for the district court to have viewed this inconsistency as a harmless coincidence rather than an underhanded and deceitful indication of the prosecutor's racial motivation. This is all the more true when one considers that the jury continued to have two black jury members on the panel and one alternate.

III.

Richardson also makes a number of arguments individually challenging various aspects of his conviction and sentence. We analyze each in turn.

A.

Richardson argues that the trial court abused its discretion in admitting the testimony of Carnell Byrd because his testimony regarding purchases of cocaine from Richardson was irrelevant and prejudicial. At trial, Byrd testified that he purchased relatively large quantities of crack cocaine from Richardson for prices ranging from $250 to $500. Purchases occurred from February 1992 to May 1992.

Because the indictment charged that the conspiracy began in July 1992, Richardson argues that Byrd's testimony relating to earlier conduct was irrelevant and accordingly improperly admitted over objection. We do not agree.

6

"There is no requirement that all the Government's evidence fall within the time period of the indictment." United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994) (quoting United States v. Towne, 870 F.2d 880, 886 (2d Cir. 1989)). Rather, evidence of earlier activity is properly admitted if it "served to complete the story of the crime on trial." United States v. Masters, 622 F.2d 83, 87 (4th Cir. 1980).

Byrd's testimony easily met this standard. By providing background into Richardson's pre-indictment activity Richardson's ascendancy from street hustler to major drug distributor is more completely understood. See Kennedy, 32 F.3d at 886 (finding pre-indictment evidence relevant in part because it provided "background information" on defendant's activities). In addition, Richardson's sale of relatively large quantities of cocaine in the Springside area was relevant to the Government's contention that Richardson had peculiar knowledge of the area, its drug trafficking patterns, and the requirements and ingredients for cutting, preparing and ultimately distributing crack cocaine.

Accordingly, the district court did not abuse its discretion in admitting Byrd's testimony.

B.

Richardson also argues that the evidence was insufficient to establish guilt on his part of a continuing criminal conspiracy in violation of 21 U.S.C. § 848(a) and (c). Viewing the evidence in the light most favorable to the prosecution and inquiring whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," we find the evidence sufficient to sustain the verdict. Jackson v. Virginia, 443 U.S. 307 (1979).

To establish the existence of a continuing criminal enterprise, the Government must prove beyond a reasonable doubt that: (1) the defendant committed a felony violation of the federal drug laws; (2) such violation was part of a continuing series of violations of drug laws; (3) the series of violations were undertaken by a defendant in concert with five or more people; (4) the defendant served as an organizer or supervisor or in another management capacity with respect to these other persons; and (5) the defendant derived substantial

7

income or resources from the continuing series of violations. <u>See</u> States v. Ricks, 882 F.2d 885, 890-91 (4th Cir. 1989).

Richardson argues that the Government has not carried its burden as to element four because there is insufficient evidence that Richardson organized or supervised five or more people. Richardson's claim is without merit. There was extensive evidence before the trier of fact to establish that Richardson was the principal leader in a well-planned and intricate drug trafficking enterprise involving more than five persons. Richardson fronted kilograms of crack cocaine to Joseph Dodd, Jermaine Golden, and Jeff Hamm at a cost of $28,000 per kilogram. <u>See</u> JA 345. Richardson also supplied crack for redistribution on the streets to Latanya Crawford, Avery Lawton, Leon Porter, Bob Holman, and Ron Barnes. <u>See</u> JA 315-16, 445, 452-53, 528, & 1070. Testimony from others established that Richardson was the boss of the operation, with Dodd his lieutenant, and Golden a supplier. <u>See</u> JA 621. Richardson, on at least one occasion, financed a trip to South America to purchase and bring back significant quantities of crack cocaine. <u>See</u> JA 1122-24. Richardson also supplied weapons to his underlings and enforced his will through violence when associates became greedy or otherwise failed to pay back fronted cocaine. <u>See</u> JA 324-38.

This evidence is more than sufficient to establish the elements of a continuing criminal enterprise. A reasonable juror could easily conclude that Richardson was operating and leading a full scale and detailed continuing criminal enterprise. He had several underlings, a major supplier, and a network of distribution. He enforced his authority through violence and left his supplies in various apartments throughout the Portsmouth area. For these reasons, Richardson's conviction is supported by the evidence.

C.

Next, Richardson challenges the district court's refusal to grant an instruction proffered by the defense that a "mere buyer/seller relationship is not sufficient to prove a violation [of the continuing criminal enterprise charge]." Appellant's brief at 28. Relying on this circuit's decision in <u>United States v. Butler</u>, 885 F.2d 195 (4th Cir. 1989),

8

Richardson argues that he is entitled to such an instruction as a matter of law.

Richardson reads <u>Butler</u> too broadly. Nowhere does <u>Butler</u> imply that a buyer/seller relationship is always insufficient as a matter of law to establish supervision, control, or management for purposes of 21 U.S.C. § 848. <u>Butler</u> does state that "the mere showing of a buyer-seller relationship without more is insufficient" but it also makes clear that whether supervision or control exists is a unique factual determination that depends on the nature of the respective relationships and the peculiar facts associated with each case. <u>See Butler</u>, 885 F.2d at 201. We recognized the fact-intensive nature of such an inquiry when we upheld the refusal to give a similar instruction <u>sua sponte</u> in <u>United States v. Hall</u>, 93 F.3d 126, 130 (4th Cir. 1996).

For these same reasons, and because there was sufficient evidence to establish that much more than a buyer/seller relationship existed here, Richardson's argument is without merit.**2**

D.

Richardson also challenges two separate enhancements of his sentence based upon his use of a firearm (U.S.S.G.§ 2D1.1(b)(1)) and his fleeing from law enforcement officials (U.S.S.G.§ 3C1.2).

Richardson argues that he improperly received a two-point firearm enhancement because there was an insufficient nexus establishing a link between Richardson's criminal enterprise and the weapons found in his possession. We do not agree.

There is a plethora of evidence establishing that Richardson used weapons to intimidate and enforce order during the period of the continuing drug enterprise. For example, Latanya Crawford, a Richardson distributor, was threatened with a weapon by Richardson. In fact,

---

**2** Richardson also challenges the district court's failure to instruct the jury <u>sua sponte</u> on the requirement that all jurors agree unanimously on which three acts constitute a continuing series of violations within the meaning of the Statute. This circuit refused to require such an instruction in <u>Hall</u> and therefore this claim is without merit. <u>See id</u>. at 129-30.

9

Richardson shot at her when she failed to pay for cocaine he had previously fronted her. See JA 324-26, 534-36, 563-64, 721, 1166. On several other occasions weapons were found in Richardson's possession and commingled with cash. See JA 743-45, 888-89, 905. This evidence is more than sufficient to establish by a preponderance of the evidence that Richardson used a firearm "during the commission of the offense."

Richardson also challenges his two-point enhancement for fleeing. Section 3C1.2 authorizes a two-point enhancement if the "defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."

Before the district court below and on appeal, the Government posits two incidents which it contends were sufficient to support the enhancement. The first occurred on August 8, 1983, when Richardson fled from law enforcement officers attempting to pull his motor vehicle over for speeding. When he was ultimately apprehended a short time later, Richardson was found in possession of $1,980 which the district court later found was proceeds from the sale of narcotics. The second incident occurred on February 2, 1995, when Lawton fled from law-enforcement officials and fired a shot at officers who were responding to calls of gunshots in the Springside neighborhood.

The district court refused to enhance based upon the February 2 incident, finding it insufficiently related to the criminal conspiracy to fall within the sentencing enhancement's scope. Relying on Richardson's possession of $1,980 in drug proceeds, however, the court did conclude that Richardson was acting within the scope of the conspiracy when he fled from law-enforcement officials on August 8. See JA 1449.

The district court assumed and Richardson argues that § 3C1.2 requires some nexus between the underlying convictions and the act of fleeing which forms the basis for the level-two enhancement. Though we have not previously addressed the issue, the Ninth Circuit has assumed (though never held) that § 3C1.2 requires some relationship between the act of fleeing and the underlying conviction and sen-

10

tence being enhanced. See United States v. Duran , 37 F.3d 557 (9th Cir. 1994).

Making the same assumption here, we conclude that the district court did not clearly err in attributing Richardson's possession of a substantial amount of drug proceeds to his ongoing drug enterprise. At the time of flight, Richardson was actively engaged in the sale and distribution of narcotics. It was well within the court's discretion to associate that activity with Richardson's decision to lead law enforcement officers on a high speed pursuit through the City of Portsmouth. Accordingly, any requirement of a nexus between the drug conspiracy conviction and Richardson's flight is satisfied.

IV.

Golden challenges the attribution to him of 2.01 kilograms of cocaine as recommended in the presentence report. At sentencing Golden argued that this amount was inappropriate because there was no credible evidence at trial to support these findings. Specifically, Golden challenged the credibility of Jeffrey Hamm (a cooperating witness) upon whose testimony the presentence report relied.

Golden argues that the district court did not make an independent factual determination that Hamm's testimony was credible. He contends that, instead, the district court relied exclusively on the jury's finding of guilt to support the credibility of Hamm's testimony. Golden suggests that such reliance is inappropriate when the guilty verdict could have been obtained without believing the testimony and accepting the credibility of the relevant witness.

Even if we assume, however, that it is inappropriate for sentencing courts to rely exclusively on a general jury verdict to sustain the credibility of a witness' testimony, that did not occur here. The court addressed the relevant sentencing report recommendations by refusing to overrule Golden's objections to the relevant paragraphs because "there was evidence in this case to support" the statements made. See JA 1495. As the court explained, even though Hamm was "a cooperating witness" he was "credible and . . . also competent to give testimony." Though the court did not specifically state, as it did at other times, that the "testimony was credible," such a finding was

11

implicit in its discussion of Hamm's testimony, in particular of its finding that there was additional evidence in the record to support Hamm's statements regarding drug quantities.

Accordingly, the district court's decision when read as a whole must be interpreted as making an independent judgment of credibility. The district court having made such a determination, Golden's objection is without merit.

V.

Finally, Lawton objects to the amendment of his presentence report and subsequent attribution of 100 grams of crack cocaine because the Government failed to follow the procedures for objection and amendment provided in the local rules of the District Court for the Eastern District of Virginia and Federal Rule of Criminal Procedure 32.

Lawton's original presentence report attributed over 500 grams of crack cocaine to him. As required by Rule 32(b)(6)(B), Lawton objected to this attribution. The probation officer, upon review, concluded that the evidence did not support the 500 grams and accordingly struck the paragraph. Striking this paragraph, however, left only 18.2 grams of cocaine attributable to Lawton, an amount the Government felt after its own review of the presentence report was grossly disproportionate to the level of drug activity carried out by Lawton. Accordingly, the Government, in an ex parte action, requested an additional attribution of 100 grams of crack cocaine, to Lawton. The probation officer acquiesced.

The Government concedes, as it must, that it did not notify Lawton of the amendment of the report within the period required by the Rules. Rule 32 specifically provides that "[w]ithin 14 days after receiving the [PSR], the parties shall communicate in writing to the probation officer, and to each other, any objections to any material information . . . contained in or omitted from the[PSR]." Lawton did not receive notice of the alterations of the report until three days before sentencing.

Nevertheless, Lawton can point to no prejudice resulting from the Government's technical violation. Though Lawton is indeed "preju-

12

diced" in the sense that an additional 100 grams of cocaine were attributed to him, he does not, and cannot contend that the additional attribution was not supported by the record so that the prejudice suffered was unfairly imposed. Nor does he contend that he was somehow hampered in preparation for sentencing by the technical violation of Rule 32. Indeed the Government's failure to notice an objection and make Lawton aware of subsequent alterations stems here not from the Government's own attempt to thwart the Rules but from a conscientious decision to lower the drug amounts based upon Lawton's own objections. In such a circumstance, we see no reason for overturning an accurate and fair sentencing determination. See United States v. Jones, 913 F.2d 174 (4th Cir. 1990) (refusing to overturn sentence for failure to follow technical requirement of Rule 32 because no prejudice resulted from violation).

AFFIRMED

13