UNITED STATES of America

v.

Corey KEMP, et al.

Nos. CRIM.A. 04–370–02, CRIM.A. 04–370–03, CRIM.A. 04–370–04, CRIM.A. 04–370–05, CRIM.A. 04–370–06.

United States District Court,
E.D. Pennsylvania.

March 18, 2005.

Michael A. Schwartz, Richard J. Zack, Robert A. Zauzmer, Catherine Votaw, Joseph F. Minni, Joan L. Markman, William B. Carr, Jr., United States Attorney's Office, Philadelphia, PA, for United States of America.

Christopher G. Furlong, Law Offices of Christopher G. Furlong, Media, PA, Lloyd G. Parry, Davis, Parry, Tyler & Wright, Michael J. McGovern, Monteverde, McAlee, Fitzpatrick, Tanker & Hurd, William R. Spade, Jr., The Law Offices of William Spade, Scott Godshall, List & List, Catherine M. Recker, Lisa A. Mathewson, Welsh & Recker, P.C., Thomas H. Suddath, Jr., Lathrop B. Nelson, III, Montgomery, Mccracken, Walker & Rhoads, L.L.P., Joel Harvey Slomsky, Joel Harvey Slomsky, Esquire, Joseph P. Grimes, Grimes and Grimes, Nino V. Tinari, Jeffrey M. Lindy, Philadelphia, PA, Kevin H. Marino, Marino & Associates, P.C., Lawrence S. Lustberg, Crummy, Del Deo, Dolan, Griffinger and Vecchione, Newark, NJ, Anthony T. Chambers, Detroit, MI, Lewis Myers, Jr., Chicago, IL, Nathaniel E. Jones, Jr., Jones & Associates, P.C., Baltimore, MD, for Corey Kemp, et al.

## MEMORANDUM RE: FEDERAL RULE OF EVIDENCE 104

BAYLSON, District Judge.

The issue presented is whether facts have been presented to the Court sufficient to find, pursuant to F.R.E. 104(a), by a preponderance of the evidence, that statements of alleged coconspirators may be admitted as evidence against any of the Defendants pursuant to F.R.E. 801(d)(2)(E).

In response to pretrial motions, the Court declined to rule in advance of trial whether statements of one or more Defendants were admissible against non-declarant Defendants. *See* Memorandum and Order dated February 10, 2005. During the trial, which started on February 22, 2005, the Court has received evidence subject to objection as to the admissibility of statements of co-Defendants. On several occasions, the Court has advised the jury that statements of certain Defendants (generally contained in intercepted telephone communications) are only admissible against the declarant/Defendant at this time.

Third Circuit cases discussing this issue include *United States v. Continental Group, Inc.*, 603 F.2d 444 (3d Cir.1979), *cert. denied* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980), *United States v. Ammar*, 714 F.2d 238 (3d Cir.1983), *cert. denied* 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983) and *United States v. Gambino*, 926 F.2d 1355 (3d Cir.1991) *cert. denied* 501 U.S. 1206, 111 S.Ct. 2800, 115 L.Ed.2d 973 (1991).[1]

---

**1.** Inasmuch as this Memorandum is being prepared during the middle of a lengthy and complex trial, the Court's review of the evi-

The Third Circuit has clearly left to the discretion of the district court, particularly in complex multi-defendant conspiracy trials, the determination of when it is appropriate to make a ruling as to whether the out-of-court statements of one defendant are admissible against other defendants under the co-conspirator exception to the hearsay rule. The trial judge in both *Continental Group* and *Gambino* was former Chief Judge Bechtle of this Court. His decision in *U.S. v. Gambino*, 728 F.Supp. 1150 (E.D.Pa.1989) is instructive, noting that the determination pursuant to F.R.E. 104 is "not subject to precise calculus" and that some independent evidence is necessary to corroborate the alleged co-conspirator's statements. In *Gambino*, Judge Bechtle determined, post trial, that the government's evidence during the presentation of its case in chief satisfied the F.R.E. 104 standard, including a determination by Judge Bechtle that one of the government's principal witnesses was credible. Judge Bechtle's determination and analysis was upheld by the Third Circuit, 926 F.2d at 1361–62.

However, Third Circuit cases are also clear that the court need not have a formal hearing or make a distinct ruling under Rule 104 because that Court has frequently found that when a district court judge sends a conspiracy case to the jury, the judge has made an implicit ruling that the requirements of Rule 104 have been satisfied. The Third Circuit has indicated that only "slight" evidence is necessary for the government to satisfy the requirements of Rule 104, which incorporates a preponderance of evidence standard, and without regard to the rules of evidence. *United States v. Castro*, 776 F.2d 1118, 1126 (3d Cir.1985) (internal citations omitted), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1233, 89 L.Ed.2d 342 (1986). This Court has not yet discovered any reported decisions which articulate rulings made after a specific 104 hearing held in the context of a trial. It is generally discussed on a post-trial basis.

This Court decided that the Rule 104 hearing would be first held as to Defendants Kemp, Hawkins and Knight, upon the overall completion of the government's case against these Defendants. There is no need to have this hearing for all five Defendants at the same time. This hearing was held on March 18, 2005.

## A.  *Defendant Corey Kemp*

There is abundant testimony that White and Kemp agreed to make sure that individuals who wanted to do business with the City would be advised that White was influential over who got City business, that Kemp had significant power to follow White's directions in this regard and deliver City business to the people that White approved for City business. There is evidence that people who did not make contributions, when requested, either to Mayor Street's political campaign or to White's charitable interests, or both, were excluded from City business, or did not get as much as they would have gotten if they had made the contributions.

There has been evidence of several instances where Kemp and White reached a specific agreement. One such instance is Ex. 485, which concerns an attempt by White to get Andre Allen, whose firm wanted City business, to make a contribution to Mayor Street's campaign in return for attending a breakfast with Mayor Street. After White recounts a call with Allen, and complains that Allen tried to extract a promise of business in return for a contribution, and that he (White) will not have a "quid pro quo conversation," Kemp

dence will be in summary fashion and the citation of cases will be sparse.

states to White on the phone call, with implied reference to Allen, or generally:

> Kemp: Right. 'Cause if they don't, if they ain't with it they ain't going to get nothin'.
>
> White: That's right.
>
> Kemp: You know, you, you just hate to say it, but that's the way it is.
>
> White: Right.
>
> Kemp: I mean this is, this is election time, this is the time to either get down or lay down, man. I mean come on, it ain't, to me, personally, it's not even a hard decision.
>
> White: Yeah.

Another instance is the discussion White and Kemp had concerning Derrick Boyd who also testified at trial as to his efforts to get City business. In Ex. 437, White and Kemp agreed, after their unsuccessful effort to get Boyd to make contributions, which he had refused to do, that they were going to "shut him down" because "he ain't produced shit."

■ This evidence may allow the jury to find that White and Kemp secretly agreed and intended that contributors to Mayor Street's campaign would get City business in return for contributions on a quid pro quo basis, despite White's purported protestations to others about having "quid pro quo" conversations. Defendants will, of course, argue other inferences from these conversations. However, the overall evidence, including independent corroborating evidence from Janice Davis and others, have satisfied the Court, under the preponderance of evidence standard of F.R.E. 104, that White and Kemp had an agreement to deprive the citizens of Philadelphia of the honest services of Kemp, and that they acted on it.

## B. *Defendant Janice Knight*

■ The evidence as to Janice Knight has indicated that she was interested in getting more printing business from entities working on City business. There were numerous telephone calls played between Knight and White indicating that they had formed an agreement that would maximize revenues to Knight's printing firm, RPC, without regard to her costs. She received, through White and/or Kemp, confidential information as to the amount in the budget for a financing transaction and how much was allocated for the printing of particular financial papers. Knight also formed a separate company called Renee Enterprises which had management contracts at the Philadelphia Airport. However, White arranged for Renee Enterprises to receive retainer payments from Loop Capital, a financial firm which wanted to do City business and for which Knight was purportedly acting as a consultant. In one telephone call, Ex. 539, Knight is heard referring to herself as "fleecing" her own client, which the jury may find indicates her guilty knowledge, and perhaps more. Leila Meekins, an RPC employee, provided independent corroborating evidence. Kemp was a participant in many of the communications involving Knight, or with White as a communications link between Kemp and Knight, and the overall evidence satisfies the preponderance standard that Knight participated in the alleged conspiracy to deprive the citizens of Philadelphia of the honest services of Kemp.

## C. *Defendant La–Van Hawkins*

The evidence as to La–Van Hawkins concerns his payment of the cost of the Super Bowl trip for White and Kemp in late January 2003. Hawkins also acted as a conduit for White to make a payment of $10,000 to Kemp. In its Memorandum of

March 11, 2005, the Court reviewed the evidence surrounding Hawkins' alleged attempt to defraud a third party, Aslam Kahn, using White and Kemp as participants in the scheme, which provides independent corroborating evidence. During a conversation between Hawkins and White, Hawkins indicated he wanted Kemp's assistance to keep Kahn "in the hole" for a period of time. Ex. 154. What inference the jury may draw from this phrase is up to the jury, but applying a preponderance standard, the Court finds that the overall evidence against Hawkins shows that Hawkins participated in the same conspiracy, i.e., to deprive the citizens of Philadelphia of the honest services of Kemp.

### D. *Discussion*

■ To admit evidence of an alleged co-conspirator's statements under F.R.E. 801(d)(2)(E), the district court must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarants and the party against whom the statement is offered were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. *United States v. Ellis*, 156 F.3d 493, 496 (3d Cir.1998).

The Court finds, by a preponderance of the evidence, abundant direct evidence, only some of which is reviewed above, that White and Kemp conspired as charged in the indictment and circumstantial evidence that Hawkins and Knight, by their statements and conduct, some of which is reviewed above, participated in the conspiracy, and that their statements introduced into evidence were made in the course of and in furtherance of the conspiracy.

### E. *Defendants Glenn Holck and Stephen Umbrell's Motion for Immediate 104 Hearing*

By way of background, Defendants Holck and Umbrell filed an Omnibus Pretrial Motion to preclude the government from using a number of intercepted communications against them, which the Court denied without prejudice by Memorandum dated February 10, 2005. During the trial, Holck's counsel submitted a letter dated March 11, 2005 (docketed as Doc. No. 525) protesting that the government was proceeding against the other Defendants with little, if any, evidence against Holck and Umbrell, and that it was prejudicial to them and would deprive them of a fair trial.

The Court advised counsel they could make objections each time an intercepted communication not involving their clients was being played for the jury, and that the Court would, if requested, more frequently advise the jury that intercepted communications with statements by other Defendants were only admissible against those declarants/Defendants at that time. The Court further volunteered to give the jury a short instruction as to the fact that the government was proceeding against the Defendants *seriatim*, and that there would come a time when the government would present evidence as to Holck and Umbrell, and at that time the Court would rule whether statements admitted against one defendant were admissible against other defendants.[2]

---

**2.** After a brief introduction, the proposed charge stated: "At some point during the trial, I will make a decision as to whether the acts and declarations of one defendant are admissible against any of the other defendants, and if so, which defendants. I will advise you at that time what my ruling is. Even if I were to decide that the statements of one defendant are admissible against any, or all, of the other defendants, it is still up to you to decide whether the government has proved its case against each of the defendants beyond

On March 14, 2005, Defendants Holck and Umbrell filed a motion to convene a Rule 104 hearing without further delay. These Defendants assert that the Court should no longer delay holding a hearing pursuant to F.R.E. 104, because it is unduly and unfairly prejudicial to require them to sit through the entire case, principally the presentation of evidence against the other Defendants which will have consumed most of the first four weeks of trial, well before the Court might reach a decision on whether statements of other alleged co-conspirators are admissible against Holck and Umbrell under F.R.E. 801(d)(2)(E).

The present motion requests the Court to have this hearing immediately and allow the government to present proffers or exhibits that the Court would consider, along with the evidence as summarized in the government's trial brief. The government objected and urged the Court to wait until it had completed a larger part of its case.

Holck and Umbrell support their motion for immediate hearing by asserting substantive arguments that the government will be unable to prove that they ever made any agreement with any of the other Defendants or with the deceased former Defendant, Ronald White. Holck and Umbrell assert that the conspiracy count presents a classic "hub and spoke" conspiracy in which Kemp and White occupy the hub, and that although there may have been parallel "spokes" with others, these were separate and did not include them.[3] Holck and Umbrell assert there is no evidence that either of them made any agreement with White and Kemp, and particularly no agreement with White and Kemp that could constitute the conspiracy as charged in the indictment.

Although the Court does not decide the matter at this time, the government's trial brief does summarize evidence that the government asserts will prove that Holck and Umbrell purposely supplied both White and Kemp with substantial favors in the form of favorable loans and other benefits, and did so in order to be recipients of favorable treatment by White and Kemp. The government asserts that Holck and Umbrell knew of White's relationship with Kemp and that they gave favors to White and Kemp knowing that White would influence Kemp to return favors by giving City business to Commerce Bank.

The government asserts that in May 2003, when the City was about to enter a financing transaction under Mayor Street's Neighborhood Transformation Initiative ("NTI"), Kemp, with White's urging and knowledge, gave Umbrell confidential information as to what terms competitors of Commerce Bank had proposed, and allowed Commerce Bank only to make a second proposal. According to the government's trial brief, Holck and Umbrell knew of this and discussed it among themselves and with White and/or Kemp.[4]

---

a reasonable doubt. I will give you more instructions on this point at the end of the case." In a discussion at the close of trial on March 14, 2005, defense counsel objected to this instruction being given, and the Court decided not to give it.

3. The government has not specifically characterized its alleged conspiracy as a "hub and spoke" conspiracy, but assuming such an analysis is applicable, the Court notes that Holck and Umbrell's assumption that Kemp

and White occupied the hub, but that there was no "rim," may not be an accurate characterization of the evidence. A jury might be able to infer, if a hub and spoke charge was given, that Kemp occupied the hub, that White was the rim, and that the other Defendants were spokes. The Court need not make any decision on this point at this time.

4. The Court does not rule but the evidence summarized in the government's trial brief, together with other evidence so far presented

Holck and Umbrell assert in their brief that the Court should not look as to whether they "joined" an existing conspiracy, but rather whether they made an agreement. This would be semantics. Many cases allow the admission of co-conspirator testimony when a defendant joins an existing conspiracy. Holck and Umbrell are correct that the government must prove that Holck and Umbrell so agreed, but it may do so by circumstantial evidence. Many cases hold that a defendant who joins a conspiracy after it has been formed is responsible for statements made by existing co-conspirators prior to that defendant joining the conspiracy, assuming the prior statements were made during and in furtherance of the conspiracy. *See, e.g., United States v. Jackson,* 757 F.2d 1486, 1490 (4th Cir.1985).

Although there does not appear to be any evidence that Holck and Umbrell had any direct relationship with Knight and/or Hawkins, there are many cases that hold a conspiracy, i.e., an agreement to commit an unlawful act, may exist even if all the conspirators do not know each other or, indeed, have not had any transactions or communications with each other, as long as there is sufficient evidence that each of them acted to achieve the common goal of the overall conspiracy—in this case, to deprive the citizens of Philadelphia of the honest services of Kemp.

The Court is prepared to have a further hearing on Rule 104 at an earlier time than the government proposes. However, inasmuch as the Court's role under Rule 104 is to act as a "gatekeeper" for the admissibility of evidence—in this case whether alleged co-conspirator testimony is admissible against any of the Defendants under F.R.E. 801(d)(2)(E)—the Court would only determine at that point in time whether the evidence satisfies the requisite standard by a preponderance of the evidence. However, there are no cases which require such a finding, whenever it takes place during the trial, to be determinative for the entire presentation of the government's case in chief. If the Court were to find that the evidence at that point does not satisfy the standard, because the Third Circuit cases clearly allow the trial judge to make this decision as of the close of the government's case, the Court would be obliged to leave the Rule 104 record open. If the Court decides, when the government rests, that the evidence is sufficient to go to the jury, then the Court has made the requisite Rule 104 finding. *See Continental Group,* 603 F.2d at 459–60. Therefore, applying this rule to the advocacy on behalf of Holck and Umbrell, a

---

at trial concerning White and Kemp, may warrant a finding by a preponderance of the evidence that Holck and Umbrell, by their conduct concerning the NTI transaction, joined the conspiracy to deprive the citizens of Philadelphia of the honest services of Defendant Kemp. The evidence will show that, as of the time of the NTI transaction, Holck and Umbrell knew of the White/Kemp relationship and agreed with them that the favors Holck and Umbrell had previously given to Kemp and White on behalf of Commerce Bank would be returned, and they were returned, in the form of improper submission of confidential information by them to Holck and Umbrell, which they acted on and which eventually enabled Commerce Bank to get the

work it sought on the NTI transaction. The allegedly highly favorable loan to Kemp took place in November 2002, and was inferentially against the bank's economic self interest. The government asserts that its evidence as to the so-called Schnapps loan in May 2002 will present evidence that at least Defendant Umbrell joined the conspiracy at that time. The Court considers the testimony of former City Finance Director Janice Davis as providing the requisite independent corroboration of the co-conspirator testimony of White and Kemp. The cross examination of various witnesses has shown that Holck and Umbrell have defenses to the government's assertions, but these may be for the jury.

Rule 104 ruling, before the government completes its case against Holck and Umbrell, that the government has not met its burden, could be revisited at any time up until the government rests it case. Therefore, the Court does not see the prejudice to any party in having a Rule 104 hearing promptly.

One substantive consequence of the Rule 104 ruling is advice to the jury as to whether the co-conspirators' statements are admissible against more than the declarant/Defendant, and if the Court has made the requisite finding in favor of admissibility, when to advise the jury of the ruling. The Court will hear additional argument on this point.

An appropriate Order follows.

### TRIAL ORDER NO. 18

AND NOW, this 18th day of March, 2005, the Court having had a Rule 104 hearing as to Defendants Kemp, Hawkins and Knight, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED as follows:

1. The evidence presented has satisfied, by a preponderance of the evidence, that the statements of Defendants Kemp, Hawkins and Knight are admissible against each other under F.R.E. 801(d)(2)(E).

2. The Court will have additional argument on Rule 104 at the close of Court on Monday, March 21, 2005 at 4:30 p.m.